SOPHIA LAWLER, PLAINTIFF-APPELLANT, v. CHARLES AUGUSTUS LAWLER, DEFENDANT-RESPONDENT, ALICE LAWLER, INTERVENOR-RESPONDENT.

Argued June 20, 1949—Decided June 30, 1949.

528

Mr. *Charles Halsted* argued the cause for the plaintiff-appellant.

Mr. *William K. Azar* argued the cause for the defendant-respondent.

Mr. *Archibald Kreiger* (Mr. *Andrew Mainardi,* attorney) argued the cause for intervenor-respondent.

The opinion of the court was delivered by

CASE, J. The issue is whether the plaintiff-appellant is entitled to a judgment declaratory of her status as the lawful wife of the defendant, Charles Augustus Lawler, notwithstanding a Nevada decree of divorce obtained by him and his subsequent marriage, followed by some years of cohabitation, with the intervenor, Alice O'Dell Lawler.

The Advisory Master before whom trial was had concluded that the fraud, which was assumed, of her husband in obtaining the divorce and perpetrating the subsequent marriage was known to or must have been known to the plaintiff by reason of the circumstances, that "by her delay she acquiesced and permitted her husband to live with Alice Lawler for over 11 years," and that "she failed to act diligently and promptly upon her husband's return to New Jersey;" and thereupon dismissed the bill. The Appellate Division of the Superior Court, on appeal, considered that the decision in the trial court went, as indeed it had gone, on the theory of laches, that adequate support for that holding was to be found in the Court of Errors and Appeals decisions in *Cope v. Cope*, 123 *N. J. Eq.* 190 (1938), and *Sleeper v. Sleeper*, 129 *N. J. Eq.* 94 (1941), and in the Chancery decision in *Hollingshead v. Hollingshead*, 91 *N. J. Eq.* 261 (1920), and that, therefore, the decree in the Chancery Division should be affirmed.

The bill was filed as against Charles Augustus Lawler only. Forthwith Alice C. Lawler (*nee* Alice O'Dell) was given permission by the court to intervene as a party defendant "only to the extent of setting up the defense of laches," and she filed an answer as follows:

"The complainant, Sophia Lawler, herein is guilty of laches in the institution of this suit, in that she has from the date of the marriage of this intervenor with the defendant, Charles Augustus Lawler, to wit, on April 6th, 1936, stood by without having asserted in any wise the alleged invalidity of the marriage between this intervenor and the said defendant, with full knowledge of such marriage, and the fact that this intervenor and defendant, Charles Augustus Lawler, her husband, have lived together and cohabitated as husband and wife for said period of time, and in addition the said complainant Sophia Lawler acquiesced in said status and during said period of

time permitted the status of the defendant, Charles Augustus Lawler and of this intervenor to change so that equitable rights have since arisen in favor of this intervenor, and the said complainant, Sophia Lawler, by virtue of the premises is and should be estopped from asserting the alleged invalidity of the marriage of this intervenor, with the defendant, Charles Augustus Lawler."

Plaintiff replied that Alice Lawler came into court with unclean hands and should not be heard to urge the defense of laches in view of her acts in and about the obtaining of the divorce and of the intent and purpose which inspired those acts. Alice Lawler did not take the witness stand and produced no witnesses.

The proofs are clear that the marriage of plaintiff to Lawler was lawful; that the marriage domicile was in the State of New Jersey; that the domicile of both plaintiff and defendant Lawler has constantly been in this State; that there were two children of the marriage, now adults, a son and daughter by name James Lawler and Cecelia Sonntag, both of whom were witnesses for the plaintiff; that early in January, 1936, Charles Augustus Lawler left his wife and went in company with Alice O'Dell to the State of Nevada for the purpose of obtaining a divorce and perpetrating a fraud upon the courts of Nevada by representing that he had established a domicile in that state whereas he did not go there for the purpose of establishing a domicile, and had not established and did not establish a domicile, that he went there exclusively for the purpose of obtaining a divorce; that intervenor lived and cohabited with him while he was obtaining the divorce and went through a marriage ceremony in the State of Nevada within an hour or two after the decree was granted; that plaintiff did not know, in advance, of her husband's trip to Nevada or of the purpose of the trip, and that she did not appear or take any part in the Nevada action; that during the course of the Nevada proceedings she learned either by the service of papers or otherwise of the institution of the suit and herself started a suit in the Court of Chancery of the State of New Jersey, alleging that her husband had begun the divorce proceeding and by fraud and the suppression of the truth was attempting to induce the Nevada court to

adjudicate therein; that plaintiff prayed therein that her husband be perpetually restrained from proceeding with the divorce action and from setting up any decree that he might thereafter obtain in the suit to defeat or affect the plaintiff's marital rights; that plaintiff actually obtained an order calling upon the defendant Lawler to show cause why he should not be restrained and enjoined according to the prayer of the bill and carrying an *ad interim* stay directing Lawler to refrain from all further proceedings in the Nevada courts to obtain a divorce and caused the same to be served by mail; that Lawler had knowledge of the existence and nature of the New Jersey suit before he obtained his Nevada decree; that after the decree had been granted in Nevada and Lawler had returned to New Jersey the action in Chancery was dismissed *without prejudice* at the instance of complainant therein.

In 1946 Alice Lawler sued the defendant, Charles Augustus Lawler, in our Court of Chancery for separate maintenance on the ground of desertion and cruelty, and on August 8, 1947, was awarded a decree directing the defendant therein to pay her the sum of $12.50 each week. There are no children of Alice and Charles Lawler.

As to the Nevada decree. The domicile of both Sophia Lawler and Charles Augustus Lawler was in New Jersey. There never has been any doubt as to Sophia Lawler's domicile from the time the couple were married at Paterson in 1906 and established their domicile there. And there has been none with respect to Mr. Lawler's domicile except such as was raised by his own testimony in the divorce hearing when he said he had gone to Nevada with the intention of making his home there for an indefinite period. All tangible facts were against the truth of that statement and Lawler's present testimony admits of no doubt that he did not at any time intend to make his home there for an indefinite time, that he had no *animus manendi* and that he went there for no purpose except to procure, as quickly as the processes of the courts permitted, a decree of divorce, marry the intervenor, and return to his home in New Jersey; a triple purpose which was speedily enacted into fact. The plan was in his

mind from the time he left New Jersey and was never altered. Some of the testimony by Lawler in the present case follows:

"By the Court: Did you tell them (the Nevada Court) you intended to remain in Nevada?

"The Witness: No, I didn't.

"By the Court: Was it your intention to remain in Nevada when you went there?

"The Witness: No."

On cross-examination by counsel for intervenor:

"Q. And when you made answer (in the Nevada Court) with respect to your intention at that time, you were giving an honest and truthful answer? A. I couldn't give an honest answer. I went out there to get a divorce.

"Q. Even if you had to lie, you did that? A. Yes, I did that. * * * I went out there to obtain a divorce.

* * * * * * * *

"Q. When you told the judge in Nevada on April 6, 1936, that (viz., the obtaining a divorce) was not your sole and only purpose, that was an untruth? A. That's right."

Lawler reached Nevada about January 20, 1936, and immediately employed counsel to institute his suit. Decree was granted April 6, 1936. He left there on April 8, 1936, and has never been back. He returned to New Jersey and resumed his life here just where he had left it, except he had a new wife; and it was all according to the plan he had evolved before he left New Jersey.

■ Domicile is the substratum of fact upon which the power of a court to award a divorce decree rests, and while the finding of the fact of domicile by the court where the proceeding was entertained is entitled to respect that finding cannot foreclose re-examination by the courts of another state. *Williams v. North Carolina*, 325 *U. S.* 226, 89 *L. Ed.* 1577 (*U. S. Sup. Ct.* 1945); *Tonti v. Chadwick*, 1 *N. J.* 531 (*Sup. Ct.* 1949); *Sprague v. Sprague*, 131 *N. J. Eq.* 104 (*E. & A.* 1941); *Isserman v. Isserman*, 138 *N. J. Eq.* 140 (*E. & A.* 1946). Our courts have regularly reserved the right to examine into the question of domicile and to refuse recognition to a foreign divorce decree based upon fraud in the proof of

domicile. *Hubschman v. Hubschman,* 140 *N. J. Eq.* 284, 288 (*E. & A.* 1946). The modification to which that principle is subjected when both parties appeared in the divorce proceedings, *Sherrer v. Sherrer,* 334 *U. S.* 343, 92 *L. Ed.* 1429 (*U. S. Sup. Ct.* 1947), does not apply here. The want of jurisdiction of the Nevada court and the reasons therefor were raised as issues in the present pleadings and were made the subject of proof. The decree is open to collateral attack. *Tonti v. Chadwick, supra.*

It is clear that Sophia Lawler was not served with Nevada process in the State of Nevada, that she did not plead in that suit, that she did not appear or in any way contest either in person or by attorney, and that she did not consent to the jurisdiction, or to the decree or any other step in the proceedings. On the contrary, she fought with full vigor in the New Jersey courts until after the decree of divorce had been rendered and the new marriage had been consummated.

Lawler prosecuted the Nevada action with knowledge of the New Jersey proceedings and probably with knowledge of the *ad interim* restraint. The order of restraint was made March 31, 1936, and was forthwith served by mailing. In the present pleading Lawler testified:

"Q. Do you know, Mr. Lawler, whether you or your counsel in Court received copies of the New Jersey proceedings, your wife's restraining order proceedings before you went on to testify? A. I think it was brought out at the time.

"Q. Any way, you were familiar with some of the proceedings? A. Yes.

"Q. You knew of the proceedings? A. Yes, I was. I knew there was a proceeding going on."

At the hearing in Reno on April 6, 1936, whereat the final decree was granted, the court particularly questioned Lawler in a way that showed knowledge of the New Jersey suit:

"The Court: The court back there, or possibly your wife, stated you didn't intend to live here and you were perpetrating a fraud on this Court. Is that true?

"A. I know of no reason for their action in this matter."

Lawler, on his return to New Jersey, went to Sophia, promised to pay support moneys to her, and has, with one interruption, done so with substantial regularity; and Sophia, of her own volition, not on a bargain or by connivance, obtained from our Chancery Court an order of discontinuance, without prejudice, of the suit attacking the Nevada action. We recount this series of incidents, not so much because of their positive bearing upon our conclusion, although Lawler's disregard of the Chancery suit does tend to aggravate the fraud, as to make a full statement of the circumstances and to note our opinion that the discontinuing of the Chancery suit without a conclusive determination did not prejudice Sophia Lawler from later pursuing the rights which she there alleged. When Lawler returned to New Jersey, his divorce decree and his marriage to Alice O'Dell were accomplished facts. Plaintiff's effort to prevent the decree had come to naught, and the sequence of remarriage had been too swift for preliminary knowledge by her. The provision "without prejudice" contained in the order of discontinuance is in the technical language used for the preservation of the rights of the party to whom it refers.

The foreign suit was conceived and perpetrated in fraud upon the courts of Nevada, the courts of New Jersey and Mrs. Sophia Lawler. It was by one New Jersey domiciliary against another New Jersey domiciliary for divorce upon a ground alleged to have occurred while the parties resided here. It follows that the decree therein has no force or effect in this jurisdiction. *Cf. R. S.* 2:50–35.

As to laches. Alice C. Lawler was permitted to "intervene as a party defendant to this cause only to the extent of setting up the defense of laches." The order of intervention so provides and is not under appeal. Therefore, the only question to be considered as to her is whether Sophia Lawler is estopped by laches from seeking a judicial declaration that the latter is the lawful wife of Charles A. Lawler. Sophia is the lawful wife because, as we have decided, the Nevada decree is without force or effect in this State. The answer filed by the intervenor is singularly lacking in detail. It

charges Sophia with laches because she "stood by" with knowledge and without action and thereby acquiesced while equitable rights arose in favor of the intervenor. The suggestion that time of itself runs against the right of a lawful wife to establish her position as such is rather startling. It is much like saying that a wife may lose her husband by adverse possession. The word "acquiesce" may mean much or little, depending upon the facts.

Alice Lawler, as Alice O'Dell, lived and cohabited with Charles Lawler from some time early in January, 1936, to April 6, 1936. She knew that Lawler had a living wife and that she, Alice, was committing a wrong against the wife, a moral offense against society and a crime. In brazen effrontery she mocked the institution of marriage. Not only so, she was a present, physical encouragement to Lawler on his fraudulent errand. In indecent haste, mitigated only by the fact that until then she was living in sin without the pretense of a cover, she went through the marriage rites with Lawler within a matter of minutes after the signing of the divorce decree. Those are ghosts that will not down, even in the mind of the intervenor. Sometime in 1945, alarmed that the devotion of which she had robbed Sophia was slipping from her too, she wrote a letter to Charles in which she said: "I wanted you years ago and turned against my own for you when it was wrong to do so * * *," "* * * knowing our marriage is not recognized by N. J. laws you still don't try to care what becomes of me if something happened to you." Yet, having that view of the standing of her marriage under our laws, she soon thereafter sought and obtained a decree for separate maintenance on the assertion that the marriage was valid; and that, presumably, is chief among the equitable rights which she considers have arisen in her favor. Being a defendant in this cause and having the right to testify and to deny, if deny she could, the various charges and imputations of improper act and motive, she chose to remain silent.

We discover no substantial charge against Sophia except that, having delayed her suit, she may not now be heard to

say, in a judicial forum, that she is her husband's wife. That, in our opinion, is not enough to raise an estoppel on the ground of laches. We are satisfied that soon after the divorce decree was awarded Sophia knew about it and that she presently became aware that the defendant, Charles Lawler, and the intervenor claimed to be married and that they were living together as hubsand and wife. As we have said, the divorce and the new marriage had then become accomplished facts. Unless the discontinuance, with its saving clause, of the injunctive proceeding, the abstinence from subsequent litigious attack over a ten-year period and the acceptance from her husband of moneys with which to live are to be taken as an approval of the divorce proceedings, of the marriage ceremony and of the cohabitation following the same, we find no encouragement or approval by plaintiff of the acts of the defendant and the intervenor or of either of them; and we think that no such inference may be drawn. But if it were otherwise we believe that no prejudice, in either a legal or an equitable sense, has come to Alice because of that delay. She has no children. The ousting from the position of wife would have been as disturbing to her ten years ago as now, perhaps more so. In addition, the doctrine of unclean hands operates to her disadvantage; for her hands are not clean and their uncleanliness was a causative factor at the sowing of the seed from which she is now reaping the harvest.

Where our cases have applied the principle of estoppel by laches as a ground of decision in marital cases some inducement or misleading and provocative act by the estopped party has been present, or some other vital element has weighted the decision. In *Yorston v. Yorston,* 32 *N. J. Eq.* 495 (*Ch.* 1880), the decree of divorce which the wife sought to attack had been rendered by a court of competent jurisdiction. *Hollingshead v. Hollingshead, supra,* was a case wherein a wife had sued her husband for divorce in the State of Nevada, obtained her decree, and accepted a large lump sum settlement, and thereafter the husband remarried. Then the first wife sued the husband for separate maintenance as his wife and the husband answered with the above defenses. The

complainant thereupon obtained leave to file a special replication admitting the Nevada suit and decree but asserting a lack of jurisdiction in the Nevada court; and the husband moved to strike the replication. The court, for the reasons there stated, refused to strike the pleading although it was the pleader who had obtained the decree which, if valid, would vitiate the New Jersey suit; and it was with respect to what might later develop in the proofs on that unusual issue that the court supposed several eventualities which might have a bearing on the ultimate outcome, among·them laches or undue delay.

In *Cope v. Cope, supra,* the petitioner sued for divorce and was answered by the setting up of a Nevada divorce decree earlier obtained by the defendant. The court held that the validity of the earlier divorce constituted the basic issue on both the trial and the appeal and that on the facts of the case the removal of the husband from this state was definite and clear and that the Nevada decree was a valid exercise of judicial power, following *Ballentine v. Ballentine, 112 N. J. Eq. 222 (E. & A. 1932).* Having so held, and thus decided the issue, the court proceeded with the *dictum* that the petitioner had herself regarded the husband's residence in Nevada as genuine as shown by the fact that she, while fully aware of the husband's movements, of the divorce and the second marriage, had acquiesced over a period of four years, during which time the former husband had remarried.

In *Sleeper v. Sleeper, supra,* a husband went into the Nevada courts and brought action against his wife for divorce on the ground of extreme cruelty. The wife was served, went to Nevada, filed an answer and a cross-complaint in which she sought separate maintenance and incidental relief; she appeared at the trial, defended, prosecuted her cross-complaint and testified. Final decree against her was entered September 7, 1934. There was no appeal. In 1936, the husband remarried. The subsequent suit in New Jersey for separate maintenance by the wife was grounded in the contention that while the husband had a residence in Nevada for the period required by the laws of that state, it was not

for the two year period required by the laws of New Jersey for the institution of a suit here, and that, under the then *section* 33 of our Divorce Act (now *R. S.* 2:50–33), the Nevada courts could secure jurisdiction only on a preliminary residence of two years in that state. It was held that our statute, properly construed, did not require such an extended residence in the foreign state, that the wife had gone voluntarily into the Nevada courts and there litigated her marital difficulties, that she had knowledge of the decision adverse to her and took no appeal, that her husband relying thereon had remarried, and that the facts and circumstances under which she entered into and conducted her defense in the Nevada suit, followed by her long inaction and the intervention of the new marriage *contracted in good faith after a suitable waiting period* served to place her in laches and to bar her from the relief prayed for in her bill.

In *Duerner v. Duerner, 142 N. J. Eq.* 759 (*E. & A.* 1948), a husband waited for twenty years after the alleged act, without satisfactory explanation for the delay, before suing his wife for divorce on the ground of adultery. The court held that a husband may not wait to make his charges until the years dim the relevant proofs to the contrary and that the petition was rightfully dismissed. That was an attack upon a valid marriage, not in defense of it, and followed an interim approximately twice that in the instant case.

We have analyzed the foregoing cases at some length for the reason that counsel for the intervenor places reliance upon them and for the purpose of permitting their own facts and issues to distinguish them from the present litigation. The differences, in our opinion, deprive them of force as precedents in support of intervenor's argument.

It is said that the defendant, Charles Augustus Lawler, is friendly to the plaintiff in this litigation and will benefit if she prevails herein. Be that as it may, the case must be decided on the law and the facts. If the evidence of Lawler, particularly as to his earlier domicile and his status as a resident of Nevada, is helpful to the plaintiff, it is to be noted

that the known facts dove-tail much more closely with his present testimony than with that given in the Nevada suit.

The intervenor disputes the plaintiff's right to appeal from a decree rendered by the Appellate Division on an appeal from the Chancery Division of the Superior Court wherein the decision did not touch a constitutional question, to which the appellant replies that the questions of domicile and of due faith and credit are fundamentally constitutional and that the lower courts erred in not facing and deciding them. We deem it unnecessary to go deeply into that controversy. This court may certify to the Appellate Division where there are special and impelling reasons (*Rules* 1:5–2 and 1:2–2). The matters involved herein are of substance and are of importance to society generally. They are deserving of and have received our study. There was no preliminary motion to dismiss the appeal, and we are not disposed to have the case go off on a technicality when we have made careful examination of the merits.

We conclude that the decree of dismissal should be reversed, that the divorce decree of the Nevada court be adjudged and declared to be of no force and effect in the State of New Jersey, that it be adjudged and decreed that the defendant, Charles Augustus Lawler, is still the lawful husband of Sophia Lawler, that Charles Augustus Lawler be enjoined and restrained from setting up the Nevada decree or making use of the same in any matter or manner in this or any other jurisdiction to defeat or affect the marital rights of Sophia Lawler.

The record will be remanded for further consideration consistent with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, BURLING and ACKERSON—5.

*For dismissal*—Justice WACHENFELD—1.