Harry G. Herman, S.
The petitioner, Sylvia Liebman, claims to be the wife of the decedent and makes this application to vacate a decree of this court dated October 18, 1962 which granted letters of administration to the son of decedent, the respondent. The decedent and Ida Wiener applied for a marriage license on March 15,1910 in New York County and, accord *192 ing to the certification on this application, were married on April 12, 1910. There are two surviving children of this marriage, the respondent and his sister Rosalind. While the decedent maintained a home in Brooklyn for his wife and children and paid all expenses for the upkeep of the house, and continued until his death on September 18, 1962 to make, either directly or indirectly, weekly support payments, he had not lived there, or gone there, for about 40 years. He filed a separation action against her in 1918 but there was no disposition of this suit.
In November, 1933, the decedent instituted a divorce action in Chihuahua, Mexico — neither he nor his wife appeared there; she was served with process in Brooklyn. This suit alleged incompatibility and a separation of more than 14 years. The Mexican court on January 23, 1934 granted the divorce to the decedent and awarded custody of the two children to the mother. On February 15,1934, the decedent obtained a rabbinical divorce from a rabbinical court of three rabbis after his wife had failed to appear and answer charges of abusing her husband.
The decedent and Sylvia Bloom were married on February 8, 1934, a week earlier, before a Justice of the Peace in Greenwich, Connecticut. In the application for this Connecticut marriage license, the decedent stated that this was his second marriage. The ceremony was followed a few days later by a religious ceremony and a wedding reception attended by many close relatives and friends of the decedent. From that time and until decedent’s death in September, 1962, a period of almost 29 years, he and Sylvia lived openly as husband and wife; they travelled together extensively, filed joint income tax returns, were active in charitable and communal affairs as husband and wife, and were visited by the son, the respondent herein, and other relatives and friends at their homes in Westchester and New York. She was loyal to decedent, always assumed she was his wife, having relied on his statement and that of an attorney that he was divorced, Avas recognized in the community as his wife, cared for him in his illness, paid his funeral expenses and was listed in the obituary notices as the wife of decedent.
Upon the death of decedent, Ida and the daughter renounced in favor of the respondent son who obtained the letters of administration now sought to be vacated, without notice to Sylvia and without any mention of her in the application.
The petitioner attempted to prove that the clergyman who presided at the 1910 ceremony was not registered either in the New York City Clerk’s office as required by section 11-b of the Domestic Relations Law, or had he ever been a member of *193 either the orthodox or reformed rabbinical associations, and therefore this marriage was not valid; this despite the fact that decedent in the separation action of 1918 recognized this marriage and the 1933 Mexican divorce action was instituted for the sole purpose of terminating this very marriage. Decedent in the Connecticut marriage application stated this was his second marriage. At the very least there was a ceremonial marriage and the strong presumption exists that it is valid. The proof established that the rabbi certified that he performed the ceremony and the City Clerk received and filed his certification in due course. The clergyman also issued a marriage certificate to the parties in his capacity as a rabbi; he obviously was a rabbi of a small but now nonexistent orthodox Jewish congregation in the lower Bast Side of Manhattan. This contention is overruled (Matter of Silverstein, 190 Misc. 745; Matter of Cossin, 126 N. Y. S. 2d 363).
The evidence at the hearing established that the decedent was domiciled in New York and not in Mexico. He had designated a Mexican attorney to appear for him under a power of attorney that had been mailed to him. Neither was the wife, Ida, in Mexico and the Mexican decree is barren of any recital that either party was there. The decree recites that decedent’s Mexican attorney alone appeared before the court. This Mexican divorce proceeding is void and ineffective (Caldwell v. Caldwell, 298 N. Y. 146; Marum v. Marum, 8 A D 2d 975; Fishberg v. Fishberg, 16 A D 2d 629). Such a mail-order matrimonial proceeding is a “ clear legal nullity” (Rosenbaum v. Rosenbaum, 309 N. Y. 371, 376; Heine v. Heine, 10 A D 2d 864). See, also, the very complete analysis of this question by Mr. Justice Coleman in Wood v. Wood (41 Misc 2d 95).
The petitioner argues further that there exists here, under the facts adduced at the hearing, an equitable estoppel and an estoppel by laches. As to the respondent son, the argument is made that he was fully cognizant of the relationship of husband and wife between decedent and petitioner, Sylvia, that he visited at their homes and treated her in all respects as Mrs. Liebman. Just what he could do legally does not appear. His mother Ida had been served with the Mexican divorce process and had been advised by her attorney that the proceeding was void. For almost 29 years she lived alone in the house owned by decedent, for which he paid all carrying charges, and received varying sums from decedent for her support. She probably knew that decedent and petitioner, Sylvia, were living together as Mr. and Mrs. Louis Liebman all these years. She did nothing *194 about that relationship. The argument is made that her complete inaction was due to the fact that she feared certain of her relatives would be discharged from decedent’s employment or that she might risk the loss of her home or support. This is urged as an acquiescence in the Mexican divorce and the petitioner’s marriage to decedent.
The decedent’s Mexican divorce decree is dated January 23, 1934 and decedent married petitioner Sylvia two weeks later. The decedent had represented to her, as did an attorney, that he was divorced and free to marry her. She relied solely on these representations. Neither the respondent son nor wife Ida had done anything to induce petitioner to marry or had ever made any representations as to the validity or lack of validity of the Mexican divorce decree. The first time the two women saw each other was at the hearing; they had never had any contact with each other in any way whatsoever. However, petitioner argues that the wife Ida by her inactivity is now guilty of laches. However if Ida had initiated any proceeding to declare that she was the legal wife of decedent and that petitioner Sylvia was not, in the state of the record here, she would undoubtedly have succeeded and petitioner Sylvia’s marriage would have been adjudicated void. The only result as far as petitioner Sylvia is concerned is that she would have known through such possible legal action by Ida at some time during the 29 years she lived with decedent and not upon his death that she was not decedent’s wife.
As Mr. Justice Heller stated in Christensen v. Christensen (39 Misc 2d 370, 371-372): “ The governing rule of law on this question of estoppel was summed up in Weiner v. Weiner (13 A D 2d 937): ‘ The gist of the decisions is that a spouse who by acts indicates acquiescence in the divorce and so induces the other spouse to act upon the assumed validity of the decree cannot be heard to contest it.’ (Emphasis supplied.) It is clear that mere inaction or delay after knowledge of one’s rights cannot constitute laches. The doctrine of equitable estoppel may be invoked only where the conduct of a party has induced a change of position or resulted in a substantia] prejudice to the adverse party.”
As to the asserted laches of the wife Ida, there is no evidence that her inaction resulted in worsening petitioner’s position; her marriage to decedent was void ab initio (Cirone v. Cirone, 82 N. Y. S. 2d 780).
It is indeed unfortunate that the petitioner Sylvia after 29 years now finds herself in her present predicament, but the *195 cause was neither the respondent son nor his mother Ida. The affirmative representations made in 1934 by the decedent or the attorney, or both, place her now in her unhappy position. There is no doubt that had she any suspicion of decedent’s marital status, she would 'have never entered upon the Connecticut ceremony in 1934 or lived with him as husband and wife.
Her application to vacate the decree of this court of October 18,1962 awarding letters of administration to the son, Alfred L. Liebman, is denied.