Scileppi, J.
In 1927 appellant and Alphonse Gr. Sorrentino (hereafter the “ husband”) were married in Brooklyn, New York. In 1939 the parties separated after which the husband voluntarily began to pay appellant $80 per month support for herself and their two children, then 10 and 11 years of age. In the latter part of July, 1951 the husband, having retired from the New York City Police Force, and his children having reached majority, went to Reno, Nevada, and obtained a divorce decree dated October 20, 1951 by default. Appellant was served with process in this State in September, 1951 but never appeared in the Nevada action either in person or by attorney. After receiving both the summons and a copy of the decree, appellant consulted a neighbor who was an "attorney and was advised that both the summons and the decree were “ no good ”.
■ On the very- day the decree was rendered, the husband went through a. marriage ceremony with Verna Mieyzwa, the respondent herein. Less than two weeks thereafter the husband and the respondent left Nevada and eventually took up' residence in Jersey City, New Jersey, where they continued to reside until the’ husband’s, death in July, 1965.
. In May, 1952, approximately 7 months after the divorce decree was rendered, the appellant instituted an action in the former Domestic Relations Court of the City of New York, Family Court Division, for support, The court awarded appellant $50 a month payable out of the husband’s police pension fund having found that: “-[Alphonse Sorrentino] is the husband of [Erminia Sorrentino] and is legally chargeable with the support of the dependent ’ ’.
*62 These support payments continued until the husband’s death in 1965. Shortly thereafter, appellant and respondent applied to the New York Police Department for a widow’s pension. The Police Department refused to make payment' until the Supreme Court made a final determination as to who was the lawful widow. Appellant then instituted the present action seeking a declaratory judgment that the Nevada decree was void for lack of jurisdiction and that she was the lawful widow of the deceased husband.
The first trial resulted in a dismissal of the complaint. However, after appellant’s motion for a new trial based on newly discovered evidence was granted,[1] the appellant obtained a determination in her favor.
On appeal the Appellate Division reversed, 3 to 2, holding that the action was barred by the Statute of Limitations (CPLB, 213, subd. 1) and that appellant’s failure to institute a declaratory judgment action for 14 years after being advised. that the divorce decree was invalid constituted gross laches and, therefore, she is estopped from asserting that she is the lawful widow of the deceased husband.
It is our opinion that the Appellate Division incorrectly applied both the Statute of Limitations and the equitable doctrine of laches.
The appellant’s right to the widow’s pension did not mature until the husband’s death, in July, 1965. This is .evidenced by the fact that the pension was only payable to the widow and, therefore, if the appellant had predeceased the husband, no right would ever have matured in appellant’s favor. The respondent contends and the majority below has held, however, that the Statute of Limitations (CPLB 213, subd. 1) is a bar to this action for a declaratory judgment. It is' argued that the statute begins to run on a declaratory judgment action when the parties first become aware that a controversy exists and, therefore, the appellant being aware in 1951 that her *63 marital status was in dispute, the statutory period to commence the instant action expired in 1957. Surely such a position cannot be sustained.
To hold that the statutory period commences at the time a justiciable controversy arises would allow the expiration of the statutory period on the declaratory judgment action to possibly bar the commencement of an action to enforce a right before it had ever matured. This is precisely the effect of the majority’s determination below. Clearly, the more reasonable rule to adopt is that, notwithstanding the existence of a justiciable controversy which has given rise to the right to bring an action for a declaratory judgment, appellant was free to bring the instant action so long as the Statute of Limitations had not barred the enforcement of her right to the pension fund.
The appellant having initiated the present action less than two months after the husband’s death, it is clear that the present action has been brought within the time limitation set forth above.
We also disagree with the Appellate Division’s analysis with respect to the issue of laches.
As was stated in Feldman v. Metropolitan Life Ins. Co. (259 App. Div. 123, 125): “Laches, a defense peculiar to courts of equity, is founded on lapse of time and the intervention of circumstances * * * that render it unjust on equitable principles for a court of equity to assist plaintiff * * * [It] is not mere delay but delay that works disadvantage or injury.”
It is our opinion that the required delay and prejudice necessary to invoke the equitable doctrine of laches have not been established in the instant case.
Shortly after the deceased husband ceased making voluntary support payments, the appellant acted with due diligence in securing what was of practical importance to her—financial support. The order granting support did not merely specify the sum which the husband was obligated to pay, but rather also made the incidental determination, upon a showing of competent proof, that the deceased was in fact the husband of the appellant. Although it is true that the Family Court order is in no way binding on the parties in this action (Loomis *64 v. Loomis, 288 N. Y. 222), our court has stated that “ A determination by the Family Court that there is an existing marriage * * * as a preliminary to exercising or declining jurisdiction, is, within its limited summary jurisdiction, binding in that court upon the parties and final until a different determination be there made ” (288 N. Y., at p. 224). Having diligently obtained a support order in her favor and a valid determination that she was still married to the deceased, it was not incumbent upon appellant to undertake the additional burden of securing a further determination in Supreme Court; she was entitled to rely on the support order and its incidental determination of status until a subsequent determination was made to the contrary. The Family Court order was complied with until the husband’s death. The matter presently in dispute, the widow’s pension, did not arise until the husband’s death and then appellant promptly instituted this action. Under such circumstances, it can reasonably be said that the appellant has acted with all due diligence to protect her rights and a finding of delay as one of the requirements of laches cannot be sustained.
Even assuming that the requirement of delay had been satisfied, the prejudice occasioned by the alleged delay was insufficient to invoke the equitable doctrine of laches.
In most cases, similar to the one at bar, where the defense of laches has been recognized by the courts of our State, the prejudice has been a reliance on the inaction of the first spouse which has given rise to a change of circumstances (Weiner v. Weiner, 13 A D 2d 937 [remarriage]; Schuman v. Schuman, 137 N. Y. S. 2d 485 [remarriage]; Berkley v. Berkley, 142 N. Y. S. 2d 273 [issue born to second marriage]; Wynn v. Wynn, 189 Misc. 96 [remarriage]). Where, however, such as in the instant case, the remarriage occurs so soon after the divorce decree is rendered (and, as in the instant case, no children having been born to the second marriage) that it cannot be said that there has been any reliance, the courts have held that the mere passage of time is insufficient (Valentine v. Valentine, 280 App. Div. 795; Matter of Liebman, 44 Misc 2d 191). As was stated in Lawler v. Lawler (2 N. J. 527, 535): “ The suggestion that time of itself runs against the right of a lawful wife to establish her position as such is rather *65 startling. It is much like saying that a wife may lose her husband by adverse possession.”
The majority below, however, found that the appellant’s failure to commence this action until after the death of the husband seriously prejudiced the respondent’s case since the husband is no longer available to testify on the critical issues of his intention to establish a domicile in Nevada and his fulfillment of the residency requirements of that State.
While it is true that a spouse’s declarations of intention on the question of domicile are given great weight by the court issuing the divorce decree, the court which hears a collateral attack has the benefit of hindsight, and the self-serving declarations of the husband are not viewed in a vacuum. Rather the circumstances surrounding his departure and the actions taken subsequent to the granting of the decree are the primary factors to be considered. Moreover, in the instant case the unavailability of his testimony worked no great prejudice to respondent for she had accompanied the deceased to Nevada and was free to testify to the facts relevant on the issue of domicile.
Finally, having determined that neither the Statute of Limitations nor the doctrine of laches bars the bringing of the instant action, we reach the merits of the dispute, to wit, the validity of the Nevada divorce decree and the subsequent remarriage of the respondent to the deceased husband. The determination of these issues necessarily rests on a factual finding of domicile.
The Supreme Court made a finding of fact clearly supported by substantial evidence that the husband did not intend to, and did not in fact, establish a bona fide residence in Nevada.
Although the Appellate Division reversed on the law and the facts, it is evident from the opinions below that the Appellate Division agreed that the husband had not established a bona fide residence and, therefore, we are bound by such a determination (Cohen and Karger, Powers of the New York Court of Appeals, § 111).
Accordingly, the order of the Appellate Division should be reversed and the judgment of the trial court reinstated.
Chief Judge Fttld and Judges Burke, Bergan, Breitel and Jasen concur.
Order reversed, etc.

. An affidavit submitted by a brother of the deceased husband stated on personal knowledge that the husband rented an apartment in New Jersey prior to going to Nevada and, during the time he was allegedly there, he returned to New Jersey to decorate and furnish the apartment. The brother further stated that the husband indicated in many conversations that he intended to occupy this apartment with the respondent when he returned from Reno following the divorce and remarriage.