**Thelma PASCUCCI, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of United States Dept. of Health and Human Services, Defendant.**

No. 85 C 3996.

United States District Court, E.D. New York.

May 19, 1987.

Milbank, Tweed, Hadley & McCloy (Clark L. Taber, of counsel), New York City, for plaintiff.

Andrew J. Maloney, U.S. Atty. (Peter R. Ginsberg, Asst. U.S. Atty., of counsel), Brooklyn, N.Y., for defendant.

NICKERSON, District Judge.

Plaintiff Thelma Pascucci brought this action under 42 U.S.C. § 405(g) to review a final determination of defendant denying

plaintiff's application for wife's insurance benefits.

Under 42 U.S.C. § 402(b)(1) a "wife" of an individual entitled to old-age insurance benefits is herself entitled to apply for benefits. Under 42 U.S.C. § 416(h)(1)(A) an applicant is the "wife" of the individual if the courts of the state of the insured individual's domicile would find that the applicant and the individual "were validly married" at the time of the application. The government contends that plaintiff was not validly married when she applied because she is estopped under New York law to deny the validity of her husband's *ex parte* Mexican divorce.

Most of the basic facts are not in dispute. Ernest Pascucci, the wage earner entitled to old-age insurance benefits, married Thelma on December 6, 1946 in Brooklyn. Some two years later they had a daughter. However, the marriage was not a happy one, and in the early 1950's the couple separated. In 1955 Thelma brought suit in the Domestic Relations Court of the City of New York seeking maintenance and support for herself and the child. On March 31, 1955 the court made an award of $20 a week for those purposes.

In May 1955 Ernest went to Mexico and got an *ex parte* divorce. Although Thelma was served in New York, she neither appeared nor was represented in Mexico. When she got notice of the default judgment she consulted a lawyer who advised her that the *ex parte* divorce decree was not valid, that she had nothing to fear from it, and that she was still validly married to Ernest. On August 16, 1955, about three months after obtaining the divorce, Ernest married Rose Pascucci without informing Thelma. According to his testimony he happened to meet Thelma on Labor Day 1955 in front of an Abraham & Strauss store and informed her of the divorce and his remarriage. He testified that she said "I know."

Thelma testified that at that time and throughout the years she still considered herself married to Ernest and did not change her married name.

In November 1979 Rose applied for and obtained wife's insurance benefits retroactively to November 1978 on the basis of Ernest's record of earnings. In January 1981 Thelma filed an application for wife's insurance benefits on the basis of Ernest's earning record, and the government terminated benefits to Rose effective July 1981 and certified Thelma as Ernest's legal wife.

After Rose's request for reconsideration was denied, she asked for a hearing. The Administrative Law Judge (ALJ) on March 29, 1983 found that Rose was the "deemed" spouse of Ernest and plaintiff was the "actual" spouse, and that both were entitled to receive a portion of the wife's insurance benefits.

In making this ruling the ALJ followed the Second Circuit's opinion in *Rosenberg v. Richardson*, 538 F.2d 487 (2d Cir.1976). That decision concerned a wage earner who obtained an *ex parte* Mexican divorce from his first wife and two years later married his second wife. The dispute was over entitlement to widow's benefits pursuant to 42 U.S.C. § 402(e). To receive such a benefit a woman must be the "surviving wife" of the insured under 42 U.S.C. § 416(c). The term "wife" is, as noted above, defined in 42 U.S.C. § 416(h)(1). In the original legislation that section (in what is now subparagraph (A)) defined "wife," as it does now, by reference to the state law of the wage earner's domicile. However, many women whose husbands paid Social Security taxes for years found themselves ineligible for benefits they had expected because their marriages contracted in good faith were thereafter found invalid.

To remedy this, Congress enacted what is now subparagraph (B), permitting such women to be "deemed" wives for purposes of the Act. Congress also added language designed to avoid duplicate payments. Thus, subparagraph (B) includes a provision that if the "legal" widow makes an application for payment the entitlement of the "deemed" widow ends with the month before the month in which the "legal" widow becomes "entitled to a benefit."

The *Rosenberg* court construed the words "a benefit" to mean "a full benefit,"

and held that the "deemed" widow was entitled to benefits in an amount equal to the difference between (1) the full benefit the "deemed" widow would receive, but for the "actual" widow's application, and (2) the amount by which the "actual" widow's payments had been increased by virtue of her certification as "legal" widow.

On its own motion the Appeals Council reviewed the ALJ's decision and said that the *Rosenberg* case had not been acquiesced in but had been rejected by the government. The Council then decided that the record was insufficient to establish that the New York courts would hold Thelma to be Ernest's legal wife and remanded for the taking of additional evidence to resolve whether those courts would hold Thelma estopped from denying the validity of the Mexican divorce.

The ALJ took further evidence, including testimony from both Thelma and Ernest. The ALJ found that although Thelma learned after the event of the *ex parte* divorce she did not at any time believe it to be valid. He found her testimony to be "entirely credible" that she was convinced that her marriage to Ernest was never terminated. She was advised by her attorney that the Mexican divorce was not valid and that she should not fear any consequences from it. She never contemplated changing her name or remarrying, and considered herself married to Ernest to the day of the hearing. The ALJ concluded that in the light of the ruling in the *Rosenberg* decision, subsequently adhered to in *Kirkland v. Railroad Retirement Board*, 706 F.2d 99 (2d Cir.1983), Thelma and Rose were each entitled to benefits in accordance with the amounts set forth in his previous decision.

The Appeals Council, again insisting that the government did not acquiesce in the *Rosenberg* decision, found it unnecessary to determine whether that decision was binding and decided that Rose, and not Thelma, was the legal wife of Ernest because New York law would estop Thelma from asserting the invalidity of the Mexican decree.

This court considers the decision of the Appeals Council a transparent and improper effort to avoid the application of the holding of the *Rosenberg* case.

The New York Court of Appeals has stated the pertinent New York law in *Sorrentino v. Mierzwa*, 25 N.Y.2d 59, 63–65, 250 N.E.2d 58, 60–61, 302 N.Y.S.2d 565, 568–70 (1969). In that case the husband obtained an *ex parte* Nevada divorce by default. The wife was served with process in New York but never appeared in Nevada. After receiving both the summons and a copy of the decree she consulted a neighbor who was an attorney who advised her that the summons and the decree were "no good." On the day the decree was entered the husband went through a marriage ceremony with the second wife, with whom he continued to reside until his death some fourteen years later. On application of both women for a widow's pension the New York Police Department refused to make payment until a court determined who was the lawful widow. The first wife then brought action seeking a declaratory judgment that the Nevada decree was void and that she was the lawful widow. The Appellate Division held, among other things, that her failure to bring a declaratory judgment action for fourteen years after learning the divorce decree was invalid constituted gross laches and that she was thus estopped from claiming to be the lawful widow.

The Court of Appeals reversed saying that the defense of laches depended not merely on lapse of time but also on the intervention of circumstances making it unjust to assist the plaintiff. As the court said, quoting *Feldman v. Metropolitan Life Insurance Co.*, 259 App.Div. 123, 125, 18 N.Y.S.2d 285, 288 (1st Dep't 1940), "[it] is not mere delay but delay that works disadvantage or injury" that constitutes laches. *Sorrentino, supra*, 25 N.Y.2d at 63, 250 N.E.2d at 60, 302 N.Y.S.2d at 568.

The Court of Appeals said that in most cases where the defense of laches has been recognized prejudice has occurred because of a reliance on the inaction of the first spouse giving rise to a change of circum-

stances. "Where, however, such as in the instant case, the remarriage occurs so soon after the divorce decree is rendered (and, as in the instant case, no children having been born to the second marriage) that it cannot be said that there has been any reliance, the courts have held that the mere passage of time is insufficient." *Id.* at 64, 250 N.E.2d at 61, 302 N.Y.S.2d at 569–70. The court then quoted a New Jersey case, *Lawler v. Lawler*, 2 N.J. 527, 535, 66 A.2d 855, 859 (1949): "The suggestion that time of itself runs against the right of a lawful wife to establish her position as such is rather startling. It is much like saying that a wife may lose her husband by adverse possession." *Sorrentino, supra,* 25 N.Y.2d at 64–65, 250 N.E.2d at 61, 302 N.Y.S.2d at 570.

The reasoning of the *Sorrentino* case is applicable here. There is no substantial evidence that Thelma acquiesced in Ernest's *ex parte* divorce and subsequent remarriage. The only evidence is that she always considered herself married to Ernest. There is no substantial evidence that Ernest and Rose acted to their detriment in reliance on the fact that Thelma did not judicially challenge the validity of the *ex parte* divorce. The marriage of Ernest and Rose took place some time before the alleged meeting between Ernest and Thelma in front of Abraham & Strauss.

Thelma testified without contradiction that she immediately consulted her lawyer on receiving the *ex parte* divorce decree, that he advised her it was invalid in New York, that she never considered herself divorced from Ernest, and that she had not remarried and had never changed her married name. The ALJ found that Thelma was neither well educated nor a woman of means, facts thoroughly substantiated by the transcript of the hearing. The ALJ, who observed the witnesses, also found Thelma's testimony "entirely credible" that she was convinced her marriage to Ernest had not been terminated.

Defendant relies on a lower court case, *In re Estate of Guido,* 81 A.D.2d 614, 438 N.Y.S.2d 9 (2d Dep't 1981). But it is not inconsistent with the *Sorrentino* holding.

There Fred and Marie Guido were married in 1949. In June 1958 Fred obtained an *ex parte* Nevada divorce. In August 1958 he married Dorothy Guido. When he died in 1978 his will was admitted to probate on petition of his executors including Marie. The court upheld Dorothy's claim as surviving spouse, holding that Marie was estopped from contesting that claim.

The facts in that case showed clearly that Marie not merely approved the second marriage but in official papers encouraged Fred and Dorothy and the Surrogate's Court to believe in that approval. Marie witnessed the signing of Fred's will and was aware of its provisions labelling her as the former wife and Dorothy as the present wife. Marie provided the information for the probate petition which stated that Dorothy was the surviving spouse and that Marie was the divorced wife. Marie as co-executrix filed a joint tax return naming Dorothy as Fred's wife. Marie even signed checks made out to "Dorothy Guido" and "Mrs. Dorothy Guido." Thelma did no such explicit acts to indicate acquiescence in the divorce and approval of the second marriage.

The decision is reversed and the matter remanded with a direction to pay benefits in accordance with the ALJ's decision of January 29, 1985. This order shall be implemented within 60 days, and the court will entertain an application to hold defendant in contempt if the order is not complied with within that time unless an application for an extension upon good cause is made to this court. So ordered.