*141 OPINION OF THE COURT
Anthony J. Falanga, J.
There are two motions before the court, to wit: (1) defendant’s motion for an order granting summary judgment dismissing the complaint, and (2) plaintiffs’ motion for an order granting the relief sought in the complaint.
Paul Kushnick and Joyce Kushnick were married on January 23, 1960. On May 1, 1998, Paul Kushnick moved out of the marital residence. On January 14, 1999, the Nassau County Family Court granted a consent order requiring that Paul Kushnick pay spousal support to Joyce Kushnick in the sum of $400 a month.
In July 1999, Paul Kushnick paid the sum of $1,495 to an entity doing business on the Internet, known as Global Associates, to assist him in obtaining a Mexican divorce from Joyce Kushnick. On July 9, 1999 he filled out an information sheet, provided to him by Global, in support of an application for a “1” party divorce, and signed an affidavit wherein he acknowledged that he understood that “any divorce judgment granted in any foreign jurisdiction without the consent of both spouses and without both spouses submitting to the jurisdiction of said foreign Court, and without an appearance personally by at least one of the parties to the divorce, must be considered avoidable and that the divorce judgment may be contested by either spouse and could be set aside by the Court in whose jurisdiction either spouse resides.” Thereafter, Paul Kushnick received a certified copy and a translation of a final decree of divorce issued by the First Instance Court of Villahermosa, State of Tabasco, Republic of Mexico, dated July 23, 1999. He states that on the day he received the decree, he put a copy of it in Joyce’s mailbox. On September 20, 1999, Paul Kushnick and Patricia Sue Levy obtained a marriage license from the Clerk of the Town of Hempstead and on October 19, 1999 they married.
In or about June 2000, Paul Kushnick petitioned the Nassau County Family Court for a downward modification of the January 14, 1999 consent support order. During the Family Court proceeding, both parties stated on the record on June 27, 2000 that they were divorced, but Joyce Kushnick thereafter took the position, in her attorney’s memorandum of law dated July 31, 2000, that the Mexican divorce decree was invalid. Neither party has reported the disposition of this proceeding, but the order dated January 14, 1999 remains in effect, to date.
*142 In or about June 2002, plaintiffs commenced the above-captioned action seeking a judgment declaring the validity of the Mexican divorce decree and their marriage. The complaint herein states, in relevant part, that plaintiffs seek a judgment pursuant to CPLR 3001 “stating that the final divorce decree * * * validly terminated the marriage between plaintiff Paul Kushnick and the defendant herein, without determining any question or matter concerning the economic, property or support rights or obligations between the parties thereto.”
Pursuant to a motion submitted on October 9, 2002, the defendant moved for an order pursuant to CPLR 3211 (a) (7) dismissing the action on the ground that the complaint failed to set forth a justiciable controversy. In explaining why she believed there was no justiciable controversy, the defendant stated, “I have not in any way, contested the ex parte foreign judgment of divorce. I have no plans to challenge the ex parte foreign judgment of divorce.” By order dated October 16, 2002, the motion to dismiss pursuant to CPLR 3211 (a) (7) was denied, citing Azim v Saidazimova (280 AD2d 566 [2001]), on the ground that Domestic Relations Law § 236 (B) (2) specifically authorizes the court to entertain an action to declare the validity of a foreign judgment of divorce.
On or about November 11, 2002, Joyce Kushnick served an answer generally denying the allegations of the complaint and seeking a judgment dismissing the complaint. Her answer does not seek any affirmative relief.
In November 2002, Paul Kushnick filed a modification petition in the Nassau County Family Court seeking an order reducing or vacating the order dated January 14, 1999 on the ground that as of his 65th birthday in March 2003 he would no longer be receiving private insurance disability benefits and that his sole source of income would be Social Security disability benefits of approximately $1,200 a month. It appears that on March 31, 2003, the Family Court Hearing Examiner dismissed the petition on the ground that the instant declaratory judgment action was pending in the Supreme Court.
On April 9, 2003, Paul Kushnick filed a motion in this court seeking an order downwardly modifying the Family Court order dated January 14, 1999. Said motion is calendared for submission on June 12, 2003.
Joyce Kushnick now moves for an order granting her summary judgment dismissing the complaint. She contends that the Mexican decree is invalid; that it is a “sham.”
Paul Kushnick cross-moves for an order granting summary judgment for the relief sought in the complaint, to wit: a decía *143 ration of the validity of plaintiffs’ marriage and of the Mexican decree dated September 23, 1999. The complaint seeks no other relief. Mr. Kushnick concedes that he never established residency in Mexico; that he did not appear personally before the Mexican court; that Joyce Kushnick was not afforded any notice that he had commenced an action for divorce in Mexico; and that she did not submit to that country’s jurisdiction. He contends, however, that Joyce had notice of the decree prior to his October 1999 marriage to Patricia Levy and that the court should find that she is equitably estopped on the ground of laches from contesting the validity of the Mexican divorce decree. He further contends that Joyce is judicially estopped from contesting the validity of said decree on the ground that she stated on the record on June 27, 2000 in the Family Court that she was divorced, and in the aforementioned statement set forth in the affidavit she submitted in support of the CPLR 3211 (a) (7) motion, she indicated she did not intend to contest the validity of the Mexican divorce decree.
A divorce granted by a sister state will be afforded full faith and credit with regard to the termination of the marital relationship only when at least one of the parties was a domiciliary of that state (see, Williams v North Carolina, 325 US 226 [1945]; Senor v Senor, 272 App Div 306 [1947]). A divorce granted by a foreign country will be afforded comity by the State of New York where the jurisdiction of the foreign tribunal was predicated upon the consent of both parties and residency, rather than domicile, was established by a statutory “brief contact” through the appearance of one of the parties (Scheinkman, 9A [part 1] West’s McKinney’s Forms, Matrimonial and Family Law § 7:03; see, Greschler v Greschler, 51 NY2d 368 [1980]; Rosenstiel v Rosenstiel, 16 NY2d 64 [1965], cert denied 384 US 971 [1966]; Rosenbaum v Rosenbaum, 309 NY 371 [1955]; Caldwell v Caldwell, 298 NY 146 [1948]; Matter of Lovick, 201 AD2d 736 [1994]; Rabbani v Rabbani, 178 AD2d 637 [1991]; Matter of Brown, 132 Misc 2d 811 [1986]).
In Greschler v Greschler (supra), in granting comity to a divorce obtained in the Dominican Republic, on the consent of both parties, that incorporated a separation agreement, the Court of Appeals stated (at 377):
“While it is generally the rule in this State that where the basic public policy of the forum would be offended a court can refuse to recognize the validity of a foreign judgment, the public policy exception to the doctrine of comity is usually invoked only in *144 the rare instance ‘where the original claim is repugnant to fundamental notions of what is decent and just in the State where enforcement is sought’ * * * ” (Citations omitted.)
In the instant case, Paul Kushnick obtained a divorce by filling out forms he downloaded off the Internet. He never established residency in Mexico by even a brief appearance in that country. Joyce Kushnick had no notice that he commenced an action for divorce in Mexico, and she never executed a power of attorney or otherwise consented to submit to the jurisdiction of a Mexican court. This court holds that it would be repugnant to the fundamental notion of what is fair and decent to afford comity to a divorce decree procured over the Internet without notice. This is particularly true in view of the fact that once a foreign decree of divorce is recognized, it can serve as a predicate for an action in this state seeking financial relief including equitable distribution following a foreign divorce (see, Domestic Relations Law § 236 [B] [2]). Accordingly, this court will not recognize or validate the decree of divorce in issue herein, obtained through forms filled out over the Internet, unless it finds that Joyce Kushnick is equitably estopped from challenging the validity of the Mexican divorce.
With regard to the issue of equitable estoppel, the law is clear that neither inaction nor delay in contesting a foreign divorce constitutes laches (see, Sorrentino v Mierzwa, 25 NY2d 59, 63 [1969]). Estoppel based on laches is appropriate only where the court finds that the conduct of a party induced a change of position or resulted in substantial prejudice to the other party such that the lapse of time and the intervention of circumstances render it unjust for the court to aid a party seeking to challenge a foreign decree (see, Sorrentino v Mierzwa, supra; Matter of Guido, 81 AD2d 614 [1981]). There is a line of case law wherein parties who took no action for extensive periods of time, during which they accepted benefits under a separation agreement, remarried themselves or where their former spouse had remarried, were estopped on the ground of laches from challenging a foreign divorce (see, Matter of Caputo, 266 AD2d 538 [1999] [25-year delay]; Capalbo v Capalbo, 157 AD2d 696 [1990] [20-year delay]; Barrett v Barrett, 135 AD2d 1077 [1987], lv denied 71 NY2d 805 [1988]; Miller v Miller, 92 AD2d 761 [1983] [20-year delay]; Matter of Guido, supra [21-year delay]). In Farber v Farber (25 AD2d 850 [1966]), the Second Department dismissed a claim by the former wife that a Mexican divorce had been obtained by duress, *145 holding that a period of three years, during which time the husband remarried, was “inexcusable laches.” In that case, however, the wife had signed a document submitting to the jurisdiction of the Mexican court and the parties’ separation agreement had been incorporated into the Mexican divorce decree.
In the instant case, where the plaintiffs obtained a marriage license less than two months after, and married less than three months after the defendant became aware of the Internet Mexican divorce decree, the court finds, as a matter of law, that plaintiffs’ marriage and their attendant “change of position” did not result from laches on the part of the defendant (see, Sorrentino v Mierzwa, supra [husband remarried days after obtaining ex parte divorce; wife did not challenge foreign divorce until husband’s death many years later in order to receive pension benefits due widow; laches not applicable because remarriage was not result of delay on the part of the wife]). Further, other than their marriage to each other, plaintiffs have not asserted additional substantial prejudice to them as a result of any alleged laches on the part of the defendant.
The court also finds that the defendant is not judicially estopped from contesting the validity of the Mexican divorce by virtue of her prior affidavit of October 2002 wherein she stated, “I have not in any way, contested the ex parte foreign judgment of divorce. I have no plans to challenge the ex parte foreign judgment of divorce.” The doctrine of judicial estoppel, or the doctrine of inconsistent positions, serves only to preclude a party who assumed a certain position in a prior legal proceeding and secured a judgment thereon, from assuming a contrary position in another action simply because his or her legal interests have changed (see, Perkins v Perkins, 226 AD2d 610 [1996]; see also, European Am. Bank v Miller, 265 AD2d 374 [1999]; Environmental Concern v Larchwood Constr. Corp., 101 AD2d 591, 593 [1984]). Here, the statement by the defendant that she had no plan to challenge the validity of the Mexican divorce, made in support of her CPLR 3211 (a) (7) motion in this action, did not serve to judicially estop her from asserting a contrary position within the same lawsuit. Once the dismissal motion was denied and she was required to serve an answer and defend the action on the merits, she had the right to advance a contrary legal theory.
Further, the doctrine of judicial estoppel is not applicable to the June 2000 Family Court proceeding. Although the defen *146 dant herein stated on the record in that proceeding that she and Paul Kushnick were divorced, she later presented her attorney’s memorandum of law contesting the validity of the Mexican divorce decree and she clearly did not advocate for or concede the validity of the Mexican divorce decree in that proceeding. Further, the Family Court did not render a judgment in her favor based upon the validity of said decree.
Accordingly, the defendant is granted summary judgment dismissing the complaint and declaring the Mexican divorce decree as well as plaintiffs’ marriage invalid (see, Steffens v Steffens, 238 AD2d 404 [1997] [remarriage invalid upon a finding that foreign divorce was invalid]).
It is uncontroverted that even if the Mexican divorce decree had been upheld by this court, it would have constituted an adjudication of only the termination of the marital status of Paul Kushnick and Joyce Kushnick, and it would not have affected the economic rights of Joyce Kushnick as the foreign jurisdiction never acquired personal jurisdiction over her (see, Vanderbilt v Vanderbilt, 1 NY2d 342 [1956], affd 354 US 416 [1957]; Williams v North Carolina, 325 US 226 [1945]; Mattwell v Mattwell, 194 AD2d 715 [1993]). Further, the law is clear that an ex parte foreign divorce decree does not affect former spouses’ rights as tenants by the entirety in the marital residence (see, Matter of Nicholson, 180 AD2d 685 [1992]; Anello v Anello, 22 AD2d 694 [1964]).
As none of the parties to the action herein sought any financial relief in their pleadings, and as the underlying action is dismissed, Paul Kushnick’s motion, seeking an order modifying the existing Family Court support order, calendared for submission on June 12, 2003, lacks a predicate action in this court, and said motion is denied without prejudice to Mr. Kushnick’s right to seek such relief in the Family Court, retroactive to November 2002, the date he filed a petition in the Family Court seeking a downward modification.
Pursuant to Domestic Relations Law § 236 (B) (2), (5) and (6), a court has the authority to provide ancillary financial relief, including equitable distribution, in an action seeking a judgment declaring the validity or nullity of a foreign divorce. As the plaintiffs herein stated the cause of action, in their complaint, in the form of a declaratory judgment action pursuant to CPLR 3001, rather than as a matrimonial action pursuant to Domestic Relations Law § 236 (B), the complaint did not set forth a request for equitable distribution or other ancillary financial relief. To the extent that a provision in this court’s or *147 der dated April 21, 2003, setting the action down for a settlement conference, stated that the court would address ancillary financial issues, with the goal of assisting the parties in achieving a global settlement of all issues relating to a divorce, said provision intended to reflect the scope of the court’s authority pursuant to Domestic Relations Law § 236 (B) (2), (5) and (6), without consideration of the fact that neither party had served a pleading seeking equitable distribution or other ancillary financial relief.
The law is clear that parties are not permitted to split claims arising out of one “transaction” into multiple lawsuits. “[0]nce a claim is brought to final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy” (O’Brien v City of Syracuse, 54 NY2d 353, 357 [1981]). Although Paul Kushnick elected to state a cause of action in his complaint pursuant to CPLR 3001 seeking only declaratory relief, he clearly had the right to set forth a claim pursuant to Domestic Relations Law § 236 (B) for declaratory and financial relief. The doctrine of res judicata does not permit him to seek declaratory relief in one action and then to commence a subsequent action for equitable distribution following a foreign divorce. If this court had found that the defendant was estopped from contesting the Mexican divorce, and had granted plaintiffs’ summary judgment motion upholding the validity of the Mexican decree, the failure of either Paul Kushnick or Joyce Kushnick to seek equitable distribution in their pleadings, pursuant to Domestic Relations Law § 236 (B), would have resulted in their being precluded, by the doctrine of res judicata, from hereafter commencing an action seeking the equitable distribution of marital assets, as such relief could have been obtained, but was not sought, in the instant action (see, Boronow v Boronow, 71 NY2d 284 [1988]; Matter of Hodes v Axelrod, 70 NY2d 364 [1987]; Graham v Graham, 293 AD2d 345 [2002]; Zollner v Zollner, 263 AD2d 454 [1999]; Mormile v Mormile, 149 AD2d 573 [1989]). This preclusion would have likely had the greater impact on Mr. Kushnick as it appears that the only marital asset of significant value is Joyce Kushnick’s residence, the former marital home, owned by Paul Kushnick and Joyce Kushnick as tenants by the entirety. However, as the Mexican divorce decree has been declared invalid, neither Paul Kushnick nor Joyce Kushnick is barred from seeking ancillary financial relief pursuant to any divorce that might hereafter be granted in this state, or pursuant to *148 an action, commenced in the state, seeking equitable distribution subsequent to a valid divorce obtained in a foreign jurisdiction.