CHARLES C. JAMES, Respondent, *v.* ALDERTON DOCK YARDS, LIMITED, Appellant.

(Argued April 6, 1931; decided May 12, 1931.)

*Clarence K. McGuire* and *Walter T. Neville* for appellant. A declaratory judgment should not have been rendered. (*Chadbourne* v. *Mayer*, 207 App. Div. 754; *Loesch* v. *Manhattan Life Ins. Co.*, 128 Misc. Rep. 232; *Bareham* v. *City of Rochester*, 246 N. Y. 140.)

*Russell H. Robbins, Reid L. Carr* and *Paul Austin Crouch* for respondent. The court properly exercised its discretion in granting a declaratory judgment. (*White* v. *Benjamin*, 150 N. Y. 258; *Westchester Mortgage Co.* v. *Grand Rapids I. R. R. Co.*, 246 N. Y. 194; *Bloomquist* v. *Farson*, 222 N. Y. 375; *Watts* v. *Adler*, 130 N. Y. 646; *Baron* v. *Korn*, 127 N. Y. 224; *Durant* v. *Whedon*, 201 App. Div. 196; *Sartorius* v. *Cohen*, 249 N. Y. 31; *Brownell* v. *Board of Education*, 239 N. Y. 369; *Ufa Films, Inc.*, v. *Ufa Eastern Division Distribution, Inc.*, 134 Misc. Rep. 129; 226 App. Div. 869; *Allen* v. *Carsted Realty Corp.*, 133 Misc. Rep. 359; 226 App. Div. 733; *Hollins & Co.* v. *Paget*, [1917] 1 Ch. 187; *Thompson Bros. & Co.* v. *Amis*, [1917] 2 Ch. 220.) The judgment was proper. (*Morgan* v. *Calvert*, 126 App. Div. 327; *Mogelewsky* v. *Rohig*, 104 App. Div. 147; *Spears* v. *Mayor*, 87 N. Y. 359; *Lightfoot* v. *Davis*, 196

.N. Y. 261; *Bloomquist* v. *Farson*, 222 N. Y. 375; *Peck* ·v. *Schenectady Ry. Co.*, 170 N. Y. 298.)

CRANE, J.  The Alderton Dock Yards, Ltd., was a domestic corporation operating a ship repair plant and dry docks in the borough of Brooklyn, city of New York. The capital stock consisted of 25,000 shares of common stock of the par value of $100 a share, which was all owned by Albert H. Alderton and his family, with the exception possibly of qualifying certificates. Alderton was president and treasurer of the corporation, and the plaintiff Charles C. James and others having a financial interest in its success constituted the board of directors.

In January of 1926 the directors and stockholders voted that the corporation sell its property on such terms and at such price as should be determined by the board of directors who were authorized, together with the officers, to take the necessary steps to procure a purchaser.  On July 12, 1926, at a meeting of the board of directors, a resolution was passed providing for the appointment of an executive committee to be the sole selling agent of the corporation with power to negotiate and accept in its name bids for the sale of the property.  The members of the executive committee were Charles C. James, the plaintiff, and Messrs. Alderton, Davidson, Ritchings and Ackerson.  It was also unanimously determined at that meeting that only the directors were to use their best efforts to obtain a purchaser of the property of the defendant, and the compensation for so doing would be paid to whomsoever brought about the sale.

In January of 1926 the plaintiff agreed with the defendant through its president, Albert H. Alderton, that the compensation for his services in obtaining a contract of sale with the Morse Dry Dock and Repair Company would be contingent upon the making of such contract of sale; and he would be entitled to no compensation if he did not succeed in making a contract for the defendant with

the Morse Dry Dock and Repair Company; but if he succeeded he was to be paid for his said services when payments under such contract, if made, became payable to the defendant after the claims of its various creditors had been satisfied. This agreement was not in writing, but is found in a conversation which James had with Alderton about the time that the negotiations with the Morse Dry Dock and Repair Company were nearing completion. "Alderton said to me," testified the plaintiff, " ' Now, before we go any further on this thing, C. C., I think we ought to have an understanding as to what you are to be paid in case you put this deal through.' I said, ' Well, Allie, I think it is too soon to decide that. We don't know yet whether we are going to put it through. But as we have always agreed, I think whatever is the fair thing when it is accomplished is the thing to pay me. I do not want any money unless you get yours out of this thing. I have stuck with you all the way through, and I am going to try to pull you out. If I can I will expect you to treat me very handsomely. If not, you don't owe me a thing in the world.' "

The deal went through, and on April 9, 1926, the Alderton Dock Yards, Ltd., sold to the Morse Dry Dock and Repair Company its plant, real estate, business and good will for $1,400,000. Two hundred thousand dollars of this purchase price was paid in cash, and the rest by assuming and the giving of mortgages. A third mortgage was given to the defendant as part of the purchase price in the sum of $425,000 due and payable on April 9, 1931. After the consummation of this sale the board of directors proposed to compensate the plaintiff for his services and offered him $6,000 which he refused. He has brought this action to recover $88,750 as fair and reasonable compensation, arriving at the figure by charging ten per cent on the value of the chattels and five per cent on the value of the remainder. The action was commenced on May 28, 1929, the complaint demanding a

declaratory judgment, adjudging the value of the plaintiff's services to the defendant, and making the amount a lien upon all sums due and to be paid thereafter by the dock company to the defendant.

At the time of the trial and the decision of the court, July 2, 1930, the third mortgage, securing the only sum due from the dock company to the defendant, had been extended from its due date, April 9, 1931, to April 9, 1936. This fact, found by the trial court, caused it to conclude as a matter of law that the amount of the plaintiff's compensation, $88,750, became due and payable at once. The court, therefore, by its judgment gave the plaintiff a lien in this amount on all moneys due from the dock company, including that secured by the mortgage.

The plaintiff's claim against the defendant is for commission in selling property. The price of the sale was $1,400,000, of which the plaintiff claims ten per cent on the value of the personalty and five per cent on that of the real estate, making in all a total of $88,750, which he says is reasonable compensation. The contract to pay him any compensation rests in parol, and is denied by the defendant. Whether or not the plaintiff's services are worth the sum claimed, or whether there is any agreement to pay him anything, is a question of fact to be determined upon a trial. This issue would ordinarily be determined by a jury in an action at law. On the face of the plaintiff's testimony the amount due him was not to be paid until defendant received payment from the dock company under its contract of sale. The times of payment were fixed. Under ordinary conditions, therefore, we would expect the plaintiff to wait until these times had arrived and then demand payment or bring suit. He did not do this, but before the amount of the third mortgage became due brought this action for a declaratory judgment apparently for the sole purpose of procuring a lien upon the purchase price due from the dock company.

Whatever acceleration in practice has been accomplished by the declaratory judgment it has not widened and extended the equitable lien. The basis for this lien is the same as heretofore; that is, it is dependent upon some agreement express or implied that there shall be a lien upon specific property, or else it is the means adopted for enforcing equities which could not be otherwise established. It is settled law in this State that an agreement either by parol or in writing to pay a debt out of a designated fund does not give an equitable lien upon the fund nor operate as an equitable assignment thereof. (*Williams* v. *Ingersoll*, 89 N. Y. 508, 518; see, also, *Ingersoll* v. *Coram*, 211 U. S. 335.)

The theory of equitable liens has its ultimate foundation in contracts express or implied which either deal with or in some manner relate to specific property, such as a tract of land, particular chattels or security, a certain fund and the like. The agreement must deal with some particular property either by identifying it or by so describing it that it can be identified and must indicate with sufficient clearness an intent that the property so described or rendered capable of identification is to be held, given or transferred as security for the obligation. (3 Pomeroy's Eq. Juris. [4th ed.] pp. 2961–2965.) The implied contract is a term used to define those situations and conditions which make it equitable and just in applying the equity powers of the court to establish and declare a lien where otherwise there might be no relief. (See Pomeroy, *supra*, p. 2976, § 1238, for illustration.)

The substitution of an equitable lien in the place of a money judgment in an ordinary action at law should not be accomplished under the guise of a declaratory judgment. Here the plaintiff had a claim for commissions; the time of payment only was postponed. When the defendant received the purchase price the plaintiff was to be paid. The date of payment, according to the maturity of the third mortgage, was April 9, 1931. At

that time the plaintiff's commissions would be payable from the defendant. He could then maintain his action at law to recover them, and the question of the making of the agreement and the value of his services would be for a jury to determine unless a jury were waived. The repudiation of the contract by the defendant or the extension of the mortgage in no way affected the plaintiff's action at law. He either had an agreement or he did not. Under the ruling in this case every contract for the sale of goods or the performance of services could be tried in the form of an action for a declaratory judgment where the defendant repudiated the agreement or denied its existence. There was nothing here to prevent the plaintiff from bringing his action at law for services rendered against the corporation when the due date arrived. The judgment recovered would then be enforced by execution like any other money judgment in an action at law. The only purpose that the plaintiff could have had in bringing this form of action was to establish a lien upon the third mortgage. Nothing in his contract for services gives him such a lien. Viewing the testimony in the most favorable light, all the plaintiff had from the corporation was a promise to pay him well for his services in negotiating a sale of the defendant's property to the dock company. There is no suggestion that he was to be paid out of any specific property or that the mortgage or any other funds were to be assigned to him or subjected to a lien for his commissions. His agreement is no different than that of any other broker or agent for commissions. His work and labor created a debt due him from the defendant, and to collect this debt his action at law was adequate. No elements in his arrangements with the defendant bring his claim within the rule which permits the courts to enforce payment by fixing a lien upon specific property.

Section 473 of our Civil Practice Act gives power to the Supreme Court to declare rights and other legal

relations on request for such declaration, whether or not further relief is or could be claimed, and such declaration shall have the force of a final judgment. Rule 212 of the Rules of Civil Practice provides that if in the opinion of the court the parties should be left to relief by existing forms of action it may decline to pronounce a declaratory judgment, stating the grounds on which the discretion is so exercised; and rule 213 provides that questions of fact may on direction of the court be submitted to a jury.

The use of a declaratory judgment, while discretionary with the court, is nevertheless dependent upon facts and circumstances rendering it useful and necessary. The discretion must be exercised judicially and with care. (*Westchester Mortgage Co.* v. *Grand Rapids & I. R. R. Co.*, 246 N. Y. 194.) It is usually unnecessary where a full and adequate remedy is already provided by another well-known form of action. The general purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations. (*Brownell* v. *Board of Education*, 239 N. Y. 369; *Sartorious* v. *Cohen*, 249 N. Y. 31.) No limitation has been placed or attempted to be placed upon its use, and yet this main purpose underlies the exercise of discretion. (See " The Declaratory Judgment," by Prof. Edwin M. Borchard, 28 Yale Law Journal, 105; *Braman* v. *Babcock*, 98 Conn. 549, 553.) Where there is no necessity for resorting to the declaratory judgment it should not be employed. (*Wight* v. *Board of Education*, 99 N. J. Eq. 843; *List's Estate*, 283 Penn. St. 255; *Ackerman* v. *Union & New Haven Trust Co.*, 91 Conn. 500; *North Eastern Marine Engineering Co.* v. *Leeds Forge Co.*, [1906] 1 Ch. 324; [1906] 2 Ch. 498.)

Under the facts of this case the plaintiff had an action at law for commissions. He needed no declaratory judgment to establish his rights. He chose this form of

action for the purpose of procuring a lien which is dependent not upon procedure but upon an agreement, express or implied, subjecting property to a lien. There being no such arrangement with the defendant the plaintiff had no lien in law or equity. There being no lien nor equities justifying one there was no necessity for a declaratory judgment. In our above statements we have not touched upon the legality of the plaintiff's contract even if made. Whether the president had power to make such an arrangement binding on the defendant is reserved from determination as unnecessary to this decision. (*Alexander* v. *Equitable Life Assur. Society*, 233 N. Y. 300.)

The judgment of the Appellate Division and that of the Special Term should, therefore, be reversed, and as the action for commissions was prematurely brought, the complaint dismissed, with costs in all courts.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.