PENNSYLVANIA OIL PRODUCTS REFINING COMPANY, Appellant, *v.* WILLROCK PRODUCING COMPANY, INC., and Others, Defendants, Impleaded with FIRST NATIONAL BANK OF OLEAN, NEW YORK, Intervenor, Respondent.

Fourth Department, November 9, 1934.

*Austin W. Erwin,* for the appellant.

*Earl C. Vedder,* for the respondent First National Bank of Olean, N. Y.

TAYLOR, J. The action is to foreclose a $100,000 mortgage on Cattaraugus county oil property. The defendant bank on its own motion was made a defendant in order that it might claim a lien against the real property involved predominant over the lien of the mortgage under foreclosure. The trial court directed foreclosure, dismissed the defenses of the defendants Williams and held that the mortgage of plaintiff should be reformed giving to defendant bank a primary right to the proceeds of one-fourth of all the oil produced upon the premises or resting " in, under and upon such premises."

The defendants Williams acquired these oil lands in 1925 and gave back a purchase-money mortgage of $35,000, later reduced to about $20,000. For development purposes they borrowed in the aggregate about $24,000 from defendant bank. As security they gave promissory notes and in one of them pledged to the bank as collateral security one-fourth of all oil produced. In 1930 the Williamses found they could not make a success of the proposition and that both they and the lending bank were likely to lose all money invested. Thereupon the Williamses negotiated with plaintiff and a written agreement was executed, with development of the oil property by a " five spot " system in mind. The agreement recognized the compact between the bank and the Williamses that the bank should have one-fourth of all the oil run and produced and provided that a new corporation to be created (defendant Willrock Producing Corporation) should assume and agree to pay all the moneys owing to the bank. The Willrock Corporation was organized by plaintiff, the title to the property was conveyed to Willrock by the Williamses, plaintiff loaned to Willrock $100,000 or more

and received back a $100,000 mortgage which recited that it was subsequent in lien on the premises only to the purchase-money mortgage. Previous to all this plaintiff, realizing that the bank had to be taken care of and not desiring " to go down in our jeans for $23,000 " for the bank, sent defendant Walter E. Williams as its emissary to the president of the bank to make an arrangement whereby the bank would be secured and the indebtedness to it carried by the new Willrock Corporation. In all of these negotiations Williams represented not only himself but the plaintiff and the bank received an assurance that the plaintiff accepted the offer of the president of the bank to the effect that the bank would be " willing to go along if you [plaintiff] run one-fourth of the oil to us until this obligation is cleaned up and let nothing get in ahead of it." Thereafter the bank at plaintiff's request transferred its one-fourth interest in the oil runs to the Willrock Corporation and the Willrock Corporation retransferred them to the bank. As a part of the transaction, the Willrock Corporation gave the bank its note for $23,874.22 in substitution for the bank's notes against the Williamses.

The bank was not a party to any of the contracts executed by plaintiff, the Williamses and the Willrock Corporation nor was it in privity with plaintiff. The allegations in the complaint as to mistake and fraud are, therefore, not of essential importance; and the trial court made no findings of mistake or fraud. Furthermore, under the circumstances, respondent bank is not in a position technically to obtain relief in the form of a reformation of the $100,000 mortgage. The bank must stand upon its claim that plaintiff, through its officers and Walter E. Williams as its representatives, made an oral agreement with the bank for a good consideration which equity may treat as the creation of a lien on the land enforcible ahead of plaintiff's mortgage. In this respect the bank contends that on the strength of the negotiations between plaintiff and Williams and plaintiff and the bank and the set-up and *raison d'être* of the Willrock Corporation, the bank accepted the note of Willrock in substitution for the Williams notes, refrained from proceeding to enforce its claims and permitted plaintiff to proceed with the development and utilization of the oil property for its own best interests because, as the testimony shows, the plaintiff, through its representative, Walter E. Williams, agreed that " nothing would get ahead of " the bank's right to receive one-fourth of the oil run until the obligation of the Williamses to it was " cleaned up." It is significant that all the time since the deal was consummated by plaintiff the bank has continued to receive as before the proceeds derived from the sale of one-fourth of the oil produced from the property and has applied them on the Williams (or Willrock) notes

— and that plaintiff has never been paid any interest or anything upon the principal sum secured by its Williams mortgage for $100,000. Whether or not the bank president saw or should have seen the written agreement between plaintiff and the Williamses or whether or not the bank might have secured itself better by proceeding otherwise is of no more than incidental importance. While we find no intention expressed to give the bank an interest specifically as mortgagee in the real property as security, equity can imply from the testimony just mentioned an intention to grant a lien which will be equivalent. We must look at all the facts and circumstances to determine whether the bank should have an equitable lien on the real estate. Is there estoppel *in pais* against plaintiff because by its representations and conduct it has subjected the bank to loss by disappointing the expectations upon which it acted? (*Dickerson* v. *Colgrove*, 100 U. S. 578, 580.)

" It is clear that if the express intention of the parties was to create an equitable lien upon the bonds or the value thereof, or if such intention arises by a necessary implication from the terms of the agreement construed with reference to the situation of the parties at the time of the contract, and by the attendant circumstances, such equitable lien will be enforced by a court of equity." (*Walker* v. *Brown*, 165 U. S. 654, 664.) (See, also, quotations from *Pinch* v. *Anthony*, 8 Allen, 536, and from Pom. Eq. Juris. on same page.)

" The theory of equitable liens has its ultimate foundation in contracts express or implied which either deal with or in some manner relate to specific property, such as a tract of land, particular chattels or security, a certain fund and the like. The agreement must deal with some particular property either by identifying it or by so describing it that it can be identified and must indicate with sufficient clearness an intent that the property so described or rendered capable of identification is to be held, given or transferred as security for the obligation. (3 Pomeroy's Eq. Juris. [4th ed.] pp. 2961–2965.) The implied contract is a term used to define those situations and conditions which make it equitable and just in applying the equity powers of the court to establish and declare a lien where otherwise there might be no relief. (See Pomeroy, *supra*, p. 2976, § 1238, for illustration.) " (*James* v. *Alderton Dock Yards*, 256 N. Y. 298, 303.) (See, also, *Leary* v. *Corvin*, 181 N. Y. 222; *Phalen* v. *United States Trust Co.*, 186 id. 178; *Smith* v. *Smith*, 125 id. 224.)

The claim that the prior dealings and talks merged in the written agreement is of no materiality. The bank was not a party to the written agreement. The lien rests upon the oral assurances given the bank by plaintiff with full knowledge of the bank's position as to

the Williamses and the oil property and upon the action taken by the bank. It exists in conjunction with the written documents and no question of mutual mistake or of fraud and mistake vitiating the written agreements to which the bank was not a party enters into the question. The bank may have a remedy at law but everything considered it is not adequate. For justice and fairness demand that under the circumstances the bank should have more than a judgment at law possibly unenforcible; that it should have a lien upon the oil — both when under the ground (realty) and after the abstraction — prior to the lien of the plaintiff. This is not a matter of agreeing to pay out of a particular fund. In such case, as appellant contends, no lien would attach to the fund. (*James* v. *Alderton Dock Yards*, 256 N. Y. at p. 303.)

The affirmative claim in the bank's answer is not aptly stated under the theory we are adopting. Mistake and fraud in a contract as to which the bank is neither party nor privy are stressed. Still we find enough in the answer to satisfy us that a finding of an equitable lien upon both the realty and personalty preceding plaintiff's mortgage — based upon an agreement not in writing (*Schermerhorn* v. *Gardenier*, 107 App. Div. 564; affd., 184 N. Y. 612), no rights of *bona fide* purchasers or lienors being involved — will be *secundum allegata et probata*. Pleadings are broadly construed nowadays and it is apparent from the record and appellant's brief that it has had full opportunity to meet the bank's claim in its answer as we construe it. We are amending certain findings of fact and conclusions of law.

The judgment and order should be modified in accordance with this opinion and as modified affirmed.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, CROSBY and LEWIS, JJ.

Judgment so far as appealed from modified in accordance with the opinion and as modified affirmed, with costs to the respondent bank.