Bergan, J.
The function of the declaratory judgment has commonly been understood by the profession to be to determine justiciable controversies between parties which either are not yet ripe for adjudication by conventional forms of remedy, or which, for other reasons, are not conveniently amenable to the usual remedies. Underlying the policy which sanctions the use of the action is the concept that it will serve some useful purpose to the parties, e.g., to settle controversy and discourage potential litigation.
Judge Crane, writing for the court in James v. Alderton Dock Yards (256 N. Y. 298) which has become a landmark case, summarized the development of the declaratory judgment in New York, by noting that the “ general purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations ” (p. 305).
The two cases cited in the James opinion for this summarization, Brownell v. Board of Educ., (239 N. Y. 369) and Sartorious v. Cohen (249 N. Y. 31), interestingly enough, did not discuss procedural theory, but pragmatically applied the appropriate substantive remedies brought up by the actions for declaration of rights. The general policy statement in James is quite consistent with the statute (CPLR 3001) as to a declaration of *367 "rights and other legal relations of the parties to a justiciable controversy ”.
In this present case the wife, Ethel Krieger, obtained in Florida a divorce from the husband, Benjamin Krieger, in 1952. The parties had been separated since 1950. The wife was remarried in New Jersey to defendant Herbert Becker in 1964.
Four months after the remarriage, and 12 years after the Florida decree, plaintiff husband commenced this action for declaratory judgment to determine that the Florida divorce is void; that the 'plaintiff is the lawful husband ! ’ of the defendant ; and that the subsequent marriage of the wife in New .Jersey "is a nullity ’ ’.
The court at Special Term granted judgment for defendants declaring that the Florida court had jurisdiction of the parties and of the marriage and also decided that relief should not in any event be granted to plaintiff because of undue delay in seeking the declar ation.
The Appellate Division, by a divided court reversed; to hold on the facts that the Florida court had not acquired jurisdiction of the marriage and to hold, as a matter of law, that there had been no estoppel by laches.
Although some of the Judges of this court are of opinion that the weight of evidence on the issue of the jurisdiction of the Florida court supports the decision at Special Term, a majority agrees that the decision of the Appellate Division on the facts is consistent with the weight of evidence. Thus the question that remains is whether a delay of 12 years in bringing the present action works an estoppel against plaintiff.
Essentially this narrows down to the question whether the husband was justified in waiting to bring the action over a very long period from the time he had knowledge of the foreign judgment, and until after his wife remarried.
It will be observed that the basic ground for the declaration sought is the invalidity of the Florida decree from the invalidity of which it is contended that "plaintiff is the lawful husband of” the wife. It could reasonably be thought that a declaration might have been made on those subjects as early as 1952, since the jural relations of the husband and wife "are not made different or essentially changed by the additional circumstance of the 1964 remarriage and, as it will be observed, *368 the marital status after the divorce was a continuing matter of controversy between the spouses from 1952 onward.
The reason for the refusal of the Appellate Division to apply the equitable principle of laches was that it did not appear to the court that the husband could have ‘ ‘ effectively ’ ’ brought ‘ ‘ any action ’ ’ to declare the divorce invalid before the wife’s remarriage.
There are some decisions in New York, and some expressions in judicial opinions, which do point that way; but this court has never imposed such a limitation on the availability of declaratory judgment. There are significant policy reasons to lead to a holding that when one spouse believes the other has obtained an invalid foreign divorce, and is acting on the strength of it as though the marriage is legally at an end, the complaining spouse has a sufficient legal interest in the marriage to present a justiciable controversy.
This would come quite literally within the classic definition of James, i.e., that the declaration “ serve some practical end in quieting or stabilitzing an uncertain or disputed jural relation either as to present or prospective obligations ”, and it would be consistent with the terms of CPLR 3001.
The 1953 decision of the Appellate Division, First Department, in Long v. Long (281 App. Div. 254) is directly in point. There the wife maintained an action for a declaration alleging only two essentials: (a) the Nevada decree of divorce in favor of the husband was void; and (b) she was his lawful wife. The court held that the action was maintainable and that the circumstances "required that the court render a declaratory judgment setting forth the marital status of the parties, and declaring the validity or invalidity of the foreign decree ” (Cohn, J., p. 256).
On this aspect of the problem — the availability to the husband of the action—it is useful to examine Lowe v. Lowe (265 N. Y. 197). The action there brought by the wife was for a declaratory judgment to determine the invalidity of the husband’s foreign divorce, but the legal issue" as it reached this court on certified questions was whether an injunction would be granted against the husband and another woman with whom he had gone through a marriage ceremony, restraining the *369 “ husband and paramour” from representing themselves to be husband and wife.
The right to such an injunction was denied, but the opinion by Lehmaw, J., throws important light on the general problem— that the admitted allegations of the complaint: the invalid divorce in Nevada, the “marriage ceremony” there and the husband and third party living together “ are sufficient to constitute a cause of action for a judgment which will declare and establish the plaintiff’s ‘rights and other legal relations.’” (p. 200).
It is true that there was a form of marriage ceremony after a concededly invalid divorce, but this certainly played no significant role in the decision. Nor is the opinion dictum in this aspect because in order to determine whether an injunction was to be regarded as proper “further or consequential relief” under the existing practice, it became necessary to decide, and the court first decided, the availability of the action. The decision in Baumann v. Baumann (250 N. Y. 382) is similarly based.
An action for declaration was sustained as sufficient in Wynn v. Wynn (188 Misc. 425) where the wife attacked a Mexican divorce as void and asked a declaration that she was the lawful wife of defendant in circumstances where there had been no remarriage (see, further, 189 Misc. 96).
In Somberg v. Somberg (263 N. Y. 1) the court held no justifiable basis for a declaratory judgment was shown where all that was alleged was that the husband had gone to live with another woman holding her out as his wife. It was felt that a declaration would not, in this kind of a loose and errant situation, be useful and necessary (p. 4) but even there, Judge Ceane, dissenting, was strongly of opinion that the controversy was justiciable, and O’Bbiew and Cbouch, JJ., separately dissented.
It should be held, then, that plaintiff shows a sufficient justiciable controversy to have sought a declaration of jural relationship arising from the marriage long before the 12 years he waited in this case and before the wife remarried. Not only did he know promptly of the Florida divorce, but the wife had taken positions and asserted rights based on the divorce hostile to the continuance of the marriage and directed to the plaintiff.
She had, for example, tried to obtain a Jewish divorce (“gett ”) giving religious sanction to the Florida decree which, *370 in the words of the husband’s brief in this court, he “ continually resisted ’ So, he argues further, the wife ‘ ‘ knew that any remarriage would entail legal difficulties and problems ”. All this suggests a budding controversy in which the court could and should entertain a prompt action by the husband for the declaration he now seeks.
The action for a declaratory judgment, as Frank, J., noted in Guibord v. Guibord (2 A D 2d 34) is governed by equitable principles and in such an action the equitable doctrine of estoppel is applicable. This is founded on lapse of time and the intervention of circumstances which render it unjust for the court in equity to assist plaintiff (Groesbeck v. Morgan, 206 N. Y. 385, 389; Feldman v. Metropolitan Life Ins. Co., 259 App. Div. 123, 125).
Here the plaintiff waited without any recourse to judicial action until the wife, believing the divorce good, and having obtained a religious sanction which satisfied her, remarried. Such a delay with such consequence is not easily excused. In some respects the situation is similar to Farber v. Farber (25 A D 2d 850) where a delay of three years in the institution of the action, during which time the husband remarried, was regarded as ‘ ‘ inexcusable laches ’ ’. See, also, the general discussion in Sorrentino v. Mierzwa (25 N Y 2d 59, 64, 65) on circumstances in which laches may bar relief.
In declining to consider the pertinency of the inordinate length of time that plaintiff in this present case allowed to pass without recourse to any judicial remedy against the wife, the Appellate Division relied on Krakower v. Krakower (291 N. Y. 604).
But the holding in that case is very narrow. The Appellate Division had, on that record, exercised the broad discretion of the Supreme Court not to entertain the action for declaratory judgment. The first and decisive law question in this court, then, was whether that was an abuse of discretion. The Appellate Division had there expressly determined in its conclusions of law that in the exercise of discretion it refused to entertain the action (see 291 N. Y., at p. 606; 264 App. Div. 912). Unless that were to be held wrong, as a matter of law, this court could not reach the merits whether an appropriate situation for a declaration existed.
*371 This court’s decision in Krakower, therefore, is not a holding that it was inappropriate to entertain such an action, but merely that it would not interfere with the discretion of the 'Supreme Court not to entertain it. Indeed that discretion at the Appellate Division, adverse to the action for declaration in Krakower, should be compared with the favorable discretion later exercised by the same court in Long v. Long (281 App. Div. 254, supra).
The plaintiff’s action should, therefore, be barred for laches. It may be doubted, too, whether, addressed to a marriage where the parties have been apart almost 20 years, any useful result is now possible from any judicial intervention (see Guibord v. Guibord, supra). The marriage seems now dead beyond recall. The decision at Special Term that “ The plaintiff has commenced the instant action, the object of which is to accomplish an inequitable end without beneficial results to the plaintiff ’ ’ is a good summary of the situation.
Neither the Trial Judge nor the Appellate Division considered a prior decision at Special Term striking out the defense of laches. The Appellate Division, in any case, was not bound by the earlier procedural disposition. Both courts proceeded to determine the defense of laches on its merits and it should, therefore, be considered on the merits here.
The order should be reversed, without costs, and declaratory judgment directed for defendants on the ground of plaintiff’s laches.