■ BERNICE MILLER, Appellant, v JOSEPH MILLER, Respondent. — Order, Supreme Court, New York County (Gabel, J.), entered October 28, 1982, which denied plaintiff's application: (1) to declare a 1958 Mexican divorce decree, which incorporated a 1957 separation agreement, of the same force and effect as a New York judgment; (2) to enforce the support provision of the separation agreement; (3) for entry of a money judgment against defendant for arrears in support; and (4) for counsel fees, is unanimously reversed, on the law, without costs, the Mexican divorce decree is declared to be a New York judgment, the plaintiff's application for alimony arrears is granted, and the matter is remanded for assessment of the arrears and counsel fees. On June 28, 1947 plaintiff wife married defendant husband. The issue of that marriage were two sons, one born in 1950 and the other born in 1953. Subsequently, on July 24, 1957, the parties entered into a separation agreement, the terms of which were thereafter incorporated by reference, but not merged, into a Mexican decree of divorce, entered March 28, 1958. In the Mexican proceeding, plaintiff appeared in person accompanied by her counsel and the defendant, after executing a special power of attorney, appeared by his own counsel. The sixth paragraph of the incorporated separation agreement dealt with the payment of alimony. That paragraph reads: "SIXTH: The Husband agrees to pay to the Wife at her home for her support and maintenance the sum of Fifty ($50.00) Dollars per week, the first installment to be paid on the date of the execution of this agreement. The liability of the Husband for the payments set forth in this paragraph shall cease upon the day of whichever of the following events shall first occur: (a) The remarriage of the Wife: (b) The death of the Wife." The plaintiff has never remarried. For approximately 19 years from the date of the divorce decree, the defendant complied fully with the terms of the separation agreement, including the alimony paragraph. Thereafter, defendant concededly, without court approval, and over plaintiff's objection, first reduced the weekly alimony payments to $40 for the period August, 1977 to January, 1981, and then in January, 1981 he stopped paying any alimony to plaintiff. By order to show cause, plaintiff brought the instant application, pursuant to subdivision (c) of section 466 of the Family Court Act, to enforce the incorporated separation agreement, contained in the divorce decree, against defendant, for alimony arrears and counsel fees. Despite the uncontested fact that defendant specifically, in an affidavit submitted to Special Term, swore that "I do not challenge the validity of the Mexican divorce judgment as an effective and valid instrument dissolving our marriage" and the uncontested fact that, as mentioned *supra,* defendant paid the alimony as the agreement provided for almost 20 years without protest, Special Term denied petitioner's application for summary relief. The basis for Special Term's holding was the defendant's naked contention that he never signed the separation agreement. Special Term deemed that contention sufficient to raise a triable issue of fact. In spite of the fact that the original separation agreement, with defendant's signature, cannot be produced a quarter of a century after it was submitted to the Mexican court, because it appears to have been misplaced, plaintiff did produce a conformed copy. In addition, plaintiff also submitted an affidavit from Marvin Schacher (Schacher), who represented plaintiff in the negotiations culminating in the separation agreement and in the Mexican divorce proceeding. In pertinent part, in his affidavit, Schacher swore that he prepared the

separation agreement and: "I can unequivocally state that the Separation Agreement was executed by both plaintiff *and* defendant * * * On July 24, 1957, plaintiff executed a copy of the Separation Agreement in my presence. After plaintiff executed the Separation Agreement, I am positive that I saw to it that defendant immediately executed this copy of the Agreement as well * * * Subsequent to July 24, 1957, I mailed to plaintiff a copy of the Separation Agreement which I personally conformed. This is the copy of the Separation Agreement [which was an exhibit to plaintiff's papers that were submitted to Special Term]. On that conformed copy, I wrote in the names of both of the parties who had executed the Agreement, added my notary seal to indicate that I had notarized plaintiff's signature and wrote in the name of the notary who had notarized defendant's signature, Leon Miller — defendant's attorney and also his uncle * * * My recollection is that the Courts in Mexico required that a full executed separation agreement be presented to the Court at the time of the hearing. In addition, my custom and practice was to have available for the Mexican Courts the executed copy of any separation agreement between the parties. This was done by sending the original separation agreement to Mexico. The instant matter could not have been an exception". We disagree with Special Term. Our examination of this record convinces us "that the issue [found by Special Term] is not genuine, but feigned, and that there is in truth nothing to be tried" (*Curry v Mackenzie,* 239 NY 267, 270). The defendant's almost two decades of silence concerning the separation agreement, and his performance in accordance with it, leads us to conclude that defendant should be estopped from contesting the agreement since: "[w]hile mere inaction or delay does not constitute laches (see *Sorrentino v Mierzwa,* 25 NY2d 59, 63; *Sullivan v Mandigo,* 39 AD2d 111; *Matter of Liebman,* 44 Misc 2d 191), an estoppel based on laches is appropriate where the lapse of time and the intervention of circumstances which render it unjust for the court to aid the challenger occur (see *Krieger v Krieger,* 25 NY2d 364; *Matter of Bock,* 70 Misc 2d 470)" (*Matter of Guido,* 81 AD2d 614, 615). Thus, "a party to a separation agreement may not attack the validity of the agreement collaterally after it has been incorporated, as it was here, in a valid, bilateral foreign decree of divorce" (*Galyn v Schwartz,* 56 NY2d 969, 972). Not to be overlooked in this connection is the fact discussed *supra,* that defendant, who has remarried three times since his divorce from plaintiff, admitted that he is not challenging the validity of the divorce decree. In fact, defendant readily admits the validity of the Mexican decree, for to do otherwise would be an admission that he was a multiple bigamist. But, some 25 years later, he would have this court excise that portion of the decree that requires the payment of alimony. The facts do not warrant the requested relief. "In extending comity to uphold the validity of foreign country divorce decrees * * * it is logical that we would also recognize all the provisions of such decrees, including any separation agreements which may have been incorporated therein" (*Greschler v Greschler,* 51 NY2d 368, 376). Concur — Murphy, P. J., Ross, Asch, Milonas and Alexander, JJ.