KB DST Borrower, LLC v Knights Hill Ireland II DAC (2024 NY Slip Op 50414(U))

[*1]

KB DST Borrower, LLC v Knights Hill Ireland II DAC

2024 NY Slip Op 50414(U)

Decided on April 11, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 11, 2024
Supreme Court, New York County

KB DST Borrower, LLC, KB DST BORROWER CA, LLC, KB EXCHANGE PROPERTIES 2, LLC, JEFFERY PORI, KINGSBARN REALTY CAPITAL, LLC, and KINGSBARN REAL ESTATE CAPITAL 2, LLC, Plaintiffs,

against
Knights Hill Ireland II DAC and CRAYHILL CAPITAL MANAGEMENT, L.P., Defendants.

Index No. 656279/2022

Robert Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 18, 19, 20, 21, 22, 29, 30, 31, 37, 39, 40, 41, 42, 43, 44 were read on this motion to/for DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 003) 23, 24, 25, 26, 28, 32, 33, 34, 35, 36, 38, 45, 46, 47, 48, 49, 50 were read on this motion to/for CONSOLIDATE/JOIN FOR TRIAL.
Motion sequence numbers 002 and 003 are consolidated herein for disposition.
This action arises from an alleged breach by defendant Knights Hill Ireland II DAC (Knights Hill) of the terms of a certain Senior Secured Term Loan Agreement and a related Exclusivity and Right of First Offer Agreement. In motion sequence 002, defendants move, pursuant to CPLR 3211 (a) (1) and (a) (7), to dismiss the complaint in its entirety. In motion sequence 003, defendants move, pursuant to CPLR 602, for an order consolidating the action with another action pending before this court and designating the defendants in this action as the plaintiffs in the consolidated action. Plaintiffs oppose both motions. For the reasons herein, motion sequence 002 is granted in part, and motion sequence 003 is granted.
I. BACKGROUND
On December 17, 2020, plaintiffs KB DST Borrower, LLC (KB DST) and KB DST Borrower CA LLC (KB DST CA) (collectively, borrowers) entered into a Senior Secured Term Loan Agreement (Loan Agreement) with Knights Hill, which is designated as the "administrative agent" for the lenders and the "collateral agent" for the benefit of the secured parties in the transaction. The lenders are not specifically identified in the Loan Agreement or the complaint and are not party to this action. Defendant Crayhill Capital Management, LP (Crayhill) is an investment management firm affiliated with Knights Hill. The parties agreed that the lenders would extend a senior secured loan to the borrowers of up to $50 million in installments, which could be increased to $200 million subject to the terms of the Agreement, for the purpose of investment into certain eligible real estate acquisitions, termed "Core Asset Investments."
On the same day, the borrowers, Knights Hill, and Crayhill also executed a related ROFO Agreement, in which the borrowers and certain of its related parties, plaintiffs Kingsbarn Realty Capital, LLC, Jeffrey A. Pori, Kingsbarn Real Estate Capital 2, LLC, and KB Exchange Properties, 2, LLC, agreed not to engage in Core Asset Investments without first submitting the proposed investment to Crayhill for review. Both the Loan Agreement and ROFO Agreement reference each other.
The Loan Agreement provides that, if the borrowers desire to make any Core Asset Investment, they must first deliver a submission package with respect to such proposed investment to Knights Hill, as the administrative agent. Knights Hill will then engage in a review of the submission package through a procedure termed "Greenlight Approval." According to Section 3.1 of the Loan Agreement, if Knights Hill declines to fund the loan or fail to respond within ten business days, the parties deem the failure to be a declination of Greenlight Approval. Under the ROFO Agreement, the borrowers are then free to pursue alternate lenders for financing the project.
Under the Loan Agreement, the borrowers may request loan advances for funding Core Asset Investments up to the loan amount. When a Core Asset Investment is approved, Knights Hill is required to make the requested advances in full up to the principal amount of the subject loan when and as requested by the borrowers.
Sections 10.4 (a) and 8.17 of the Loan Agreement requires the borrowers to deposit gross receipts into a certain "Collection Account." Gross receipts are defined as all income received by the borrowers in relation to investments undertaken under the Loan Agreement.
Plaintiffs allege that the borrowers submitted three investment opportunities to Knights Hill for approval, which were approved, and that Knights Hill under-funded the loan advances by about $9.3 million, such that the amounts thus funded were insufficient to cover the acquisition costs for the proposed investments. Due to Knights Hill's failure to fully provide these amounts, plaintiffs allege that the borrowers were forced to raise additional funds from other sources and were prevented from consummating real estate transactions they would have otherwise completed.
In addition, plaintiffs allege that Knights Hill failed to review and act upon certain other submission packages submitted by the borrowers for Greenlight Approval within the ten business-day period as required by Section 3.1. Further, plaintiffs allege that Knights Hill demanded that the borrowers deposit all of their available operating capital into a Collection Account and a Reinvestment Account, including amounts that did not constitute gross receipts, [*2]causing the loan under the Loan Agreement to become grossly over-collateralized.
In their first amended complaint, plaintiffs bring three causes of action: (1) breach of contract; (2) declaratory judgment that their performance is excused; and (3) breach of the implied duty of good faith and fair dealing.
In motion sequence number 002, defendants move to dismiss the complaint pursuant to CPLR 3211 (a) (7) and (a) (1), arguing that documentary evidence, namely the Loan Agreement, provides a conclusive defense to the claims in the complaint.
In motion sequence number 003, defendants move to consolidate this action with another pending in this court, Crayhill Capital Management LP, et al. v. KB DST Borrower, LLC, Sup Ct, NY County, Reed, J., index No. 656286/2022, asserting that the claims in that matter share common questions of law and fact with the claims in this case.
II. DISCUSSION
A. Motion to Dismiss the Complaint (Mot. seq. no. 002)
To succeed on a CPLR 3211 (a) (1) motion to dismiss, defendants have the "burden of showing that the relied-upon documentary evidence 'resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim'" (Fortis Fin. Servs. v Fimat Futures USA, Inc., 290 AD2d 383, 383 [1st Dept 2002], quoting Scadura v Robillard, 256 AD2d 567, 567 [2d Dept 1998]).
On a motion to dismiss under CPLR 3211 (a) (7), the court accepts the facts as alleged in the complaint as true, accords plaintiffs the benefit of any possible favorable inference, and determines only whether the facts as alleged fit within any cognizable legal theory (Leon v Martinez, 84 NY2d 83 [1994]).
1. Breach of Contract
In the first cause of action, plaintiffs assert that Knights Hill breached the Loan Agreement by (1) failing to fully fund requested advance amounts in violation of Section 2.2 of the Loan Agreement; and (2) unreasonably delaying review of plaintiff's requests for proposed Core Asset Investments in violation of Section 3.1 of the Loan Agreement.
Plaintiffs sufficiently state a cause of action for breach of contract by alleging (1) existence of a valid contract, (2) plaintiff's performance of the contract, (3) defendant's material breach of the contract, and (4) damages (see Noise In The Attic Productions, Inc. v London Records, 10 AD3d 303 [1st Dept 2004]). Plaintiffs allege that Knights Hill approved three Core Asset Investments but underfunded the Advance requests by $9.3 Million, such that the borrowers were unable to consummate certain real estate investment transactions, and that, as a result, the borrowers incurred at least $4.5 million in lost profits and substantial additional costs. Plaintiffs also allege that Knights Hill delayed in taking action on the borrowers' submission packages for Greenlight Approval, in breach of Section 3.1 of the Loan Agreement.
In opposition, defendants submit the Loan Agreement and the ROFO Agreement, arguing that the documents show that Knights Hill did not breach the contracts. The court will review each of the alleged violations of the Loan Agreement in turn.
First, as to the claim that Knights Hill breached Section 3.1 by delaying in reviewing the borrowers' submissions for Greenlight Approval, the language of the Loan Agreement shows that this cannot constitute breach. Section 3.1 provides that notices of Greenlight Approvals are [*3]to be provided within ten business days, but, if Knights Hill fails to respond within that time, it is deemed to have declined to provide the loan, and the borrowers are then freed to seek outside sources for funding. In other words, the Loan Agreement does not identify a failure to respond within ten business days as a breach.
Second, as to the claim that defendants breached Section 2.2 by underfunding loan advance requests for approved Core Asset Investments, defendants argue that, as to this alleged breach, plaintiffs solely seek consequential damages, which the plaintiff borrowers waived in Section 13.4 of the Loan Agreement. Section 13.4 (d) of the Loan Agreement provides, "[t]o the fullest extent permitted by applicable law, Borrower shall not assert, and hereby waives, any claim against [defendant Knights Hill], on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, any other Loan Document or any agreement or instrument contemplated hereby, the transactions contemplated hereby or thereby, any Loan or the use of the proceeds thereof."
Here, it is not entirely clear that plaintiffs only seek consequential damages arising from this alleged breach. Plaintiffs allege that, due to Knights Hill's breach, the borrowers were unable to consummate certain real estate investment transactions. It is unclear from the allegations whether the real estate investments that the borrowers could not complete were Core Asset Investments, which are specifically contemplated in the Loan Agreement, or collateral business arrangements wholly unrelated to the Loan Agreement, as defendants assert. According to defendants' characterization, the borrowers only lost opportunities to engage in investments "with other parties" or "with third parties," such that they were not contemplated under the Loan Agreement. Plaintiffs' allegations, however, are also amenable to the interpretation that the borrowers were prevented from engaging in Core Asset Investments. Construing the allegations "liberally" and affording plaintiff with "every favorable inference," as the court must upon a motion to dismiss (Carlson v American Intl. Group, Inc., 30 NY3d 288, 297 [2017]), these lost opportunities were "bargained for" in the Loan Agreement, "the direct and immediate fruits of the contract" (Mufg Union Bank, N.A. v Axos Bank, 196 AD3d 442, 443 [1st Dept 2021], quoting Biotronik A.G. v Conor Medsystems Ireland, Ltd., 22 NY3d 799, 806 [2014]), and are direct damages arising from Knights Hill's breach.
Thus, the borrowers did not waive this breach of contract claim in Section 13.4. As defendants admit, if "Knights Hill [had] approved a Core Asset Investment and agreed to make a corresponding DST Loan but then refused to make that loan, any lost profits suffered by Kingsbarn due to its inability to consummate that Core Asset Investment could possibly qualify as general damages flowing directly from Knights Hill's breach." Plaintiffs' allegations are sufficient to support the inference that this is precisely what occurred, and the claim survives the motion to dismiss.
Accordingly, the first cause of action for breach of contract is dismissed solely to the extent that it pertains to Knights Hill's alleged breach of Section 3.3 by delaying in its review of plaintiff's submissions for Greenlight Approval. As to the part of its claim pertaining to Knights Hill's alleged breach of Section 2.2 by underfunding its approved loan advances, however, the claim may proceed.
2. Declaratory Judgment
In the second cause of action, plaintiffs seek a declaration that Knights Hill breached the [*4]Loan Agreement and that the borrowers are therefore excused from any further performance, particularly with respect to giving defendants first right of refusal.
"On a motion to dismiss a declaratory judgment action for failure to state a cause of action, 'the only question is whether a proper case is presented for invoking the jurisdiction of the court to make a declaratory judgment, and not whether the plaintiff is entitled to a declaration favorable to him'" (Gen. Ins. v Piquion, 211 AD3d 634, 634-635 [1st Dept 2022]). "The general purpose of a 'declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations'" (Touro Coll. v Novus Univ. Corp., 146 AD3d 679, 679 [1st Dept 2017], quoting James v Alderton Dock Yards, 256 NY 298 [1931]).
Here, plaintiffs present a justiciable controversy within the jurisdiction of the court, which, in this court's view, may "quiet[] or stabiliz[e]" the obligations of the parties under the Loan Agreement going forward (Touro Coll. v Novus Univ. Corp., 146 AD3d 679). Accordingly, the motion is denied as to the second cause of action.
3. Breach of Implied Covenant of Good Faith and Fair Dealing
In the third cause of action, plaintiffs also assert that Knights Hill breached the implied covenant of good faith and fair dealing by demanding that the borrowers deposit all of their working capital into the Collection Account and the Reinvestment Account, despite the fact that the Loan Agreement only requires it to submit gross receipts into those accounts.
"In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. This implied covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion. This Court has consistently observed that the covenant requires the parties to perform under the contract in a reasonable way" (Cordero v Transamerica Annuity Serv. Corp., 39 NY3d 399, 409 [2023] [internal quotation marks and citations omitted]).
Here, plaintiffs sufficiently state a cause of action for a breach of the implied covenant of good faith and fair dealing. The purpose of the Loan Agreement and the ROFO Agreement is for the lenders to provide capital for the borrowers to invest into real estate ventures. The Collection Account and Reinvestment Account are reserve accounts for the repayment of loan advances, interest and fees. According to Sections 1.1 and 10.4 (c) of the Loan Agreement, Knights Hill, as the Collateral Agent, has exclusive control of the accounts, and all funds therein are conclusively presumed to be collateral, intended to secure the borrowers' debts. Based on the above, and accepting those allegations as true, by requiring the borrowers to deposit all of their working capital into the Collection and Reinvestment Accounts, above and beyond what is required by the Loan Agreement, Knights Hill prevented the borrowers from using their working capital to invest in Core Asset Investments, depriving the borrowers of the primary benefit of the agreements (see Cordero v Transamerica Annuity Serv. Corp., 39 NY3d 399). Under such circumstances, Knights Hill's demands may not have been reasonable in view of the agreement as a whole (see id.).
Accordingly, the motion is denied as to the third cause of action.
B. Motion to Consolidate (Mot. seq. no. 003)
In motion sequence number 003, defendants seek an order pursuant to CPLR 602 consolidating the instant action with the action titled Crayhill Capital Management LP, et al. v. KB DST Borrower, LLC, Sup Ct, NY County, Reed, J., index No. 656286/2022 (Crayhill action). Plaintiffs do not oppose consolidation. As the two actions have common questions of fact and law, consolidation is appropriate (see CPLR 602 [a]; Keenan v Am. Bridge Div.-United States Steel Corp., 31 AD2d 637 [2d Dept 1968]).
The principal dispute between the parties is as to which of the two actions should be subsumed into the other. The Crayhill action involves the same parties as in this action with their roles reversed, with the exception that certain John and Jane Does 1-100 are identified as defendants in the Crayhill action. Defendants assert that the instant action should be consolidated into the Crayhill action and that they should accordingly be designated as plaintiffs in the consolidated action. Plaintiffs argue the reverse and maintain that they should be designated as plaintiffs.
The instant action was commenced on May 13, 2022 at 4:15 PM, and the Crayhill action was commenced on the same day at 6:08 PM. Because the instant action was commenced first, the court will consolidate the Crayhill action into this action. Accordingly, KB DST and the other plaintiffs in this action will be designated as plaintiffs in the consolidated action, and Knights Hill and Crayhill will be designated as defendants.
III. CONCLUSION
Accordingly, it is hereby
ORDERED that the motion to dismiss (motion seq. no. 002) is granted in part, to the limited extent that the part of the first cause of action relating to defendant Knights Hill's alleged breach of Section 3.3 of the Loan Agreement is dismissed, and denied as to the part of the first cause of action relating to defendant Knights Hill's alleged breach of Section 2.2 of the Loan Agreement and the second and third causes of action; and it is further
ORDERED that the motion to consolidate (motion seq. no. 003) is granted and the above-captioned action is consolidated in this Court with Crayhill Capital Management LP, et al. v. KB DST Borrower, LLC, Index No. 656286/2022, pending in this Court; and it is further
ORDERED that the consolidation shall take place under Index No. 656279/2022 and the consolidated action shall bear the following caption:
KB DST BORROWER, LLC, KB DST BORROWER CA, LLC, KB EXCHANGE PROPERTIES 2, LLC, JEFFERY PORI, KINGSBARN REALTY CAPITAL, LLC, and KINGSBARN REAL ESTATE CAPITAL 2, LLC,
Plaintiffs,
against
KNIGHTS HILL IRELAND II DAC and CRAYHILL CAPITAL MANAGEMENT, L.P.,
Defendants.
And it is further
ORDERED that the pleadings in the actions hereby consolidated shall stand as the pleadings in the consolidated action; and it is further
ORDERED that, within 30 days from entry of this order, movant shall serve a copy of this order with notice of entry on the Clerk of the Court, who shall consolidate the documents in the actions hereby consolidated and shall mark his records to reflect the consolidation; and it is further
ORDERED that counsel for the movant shall contact the staff of the Clerk of the Court to arrange for the effectuation of the consolidation hereby directed; and it is further
ORDERED that service of this order upon the Clerk of the Court shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website); and it is further
ORDERED that, as applicable and insofar as is practical, the Clerk of this Court shall file the documents being consolidated in the consolidated case file under the index number of the consolidated action in the New York State Courts Electronic Filing System or make appropriate notations of such documents in the e-filing records of the court so as to ensure access to the documents in the consolidated action; and it is further
ORDERED that, within 30 days from entry of this order, movant shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office, who is hereby directed to reflect the consolidation by appropriately marking the court's records; and it is further
ORDERED that such service upon the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the aforesaid E-Filing Protocol; and it is further
ORDERED that counsel are directed to appear for a preliminary conference via Microsoft TEAMS on May 16, 2024, at 12:00 PM.
DATE April 11, 2024
Robert Reed, J.S.C.